*930
 
 OPINION
 

 By the Court, Maupin, J.:
 

 In this appeal, we consider the constitutionality of NRS 217.007, Nevada’s “Son of Sam” law. In general terms, NRS 217.007 allows a felony victim to recover from the felon any monetary proceeds the felon might generate from published materials based upon or substantially related to the offense. Damage awards derived from actions brought after expiration of applicable statutes of limitation for tort damages are limited to publication proceeds. We hold that NRS 217.007 violates the First Amendment of the United States Constitution.
 

 FACTS AND PROCEDURAL HISTORY
 

 In 1998, a district court in Washoe County, Nevada, convicted respondent Jimmy Lerner of manslaughter in connection with the death of Mark Slavin. While incarcerated in the Nevada State Prison, Lerner wrote a book entitled,
 
 You Got Nothing Coming, Notes from a Prison Fish,
 
 which was published by Broadway Books and Random House in 1999. This book detailed Lerner’s imprisonment and contained descriptions of the events surrounding the killing of Mr. Slavin.
 

 Appellant Donna Seres, Mr. Slavin’s sister, sued Lerner pursuant to NRS 217.007 on behalf of her mother, Gertrude Slavin, after expiration of the statute of limitations for bringing a wrongful death action.
 
 [2]
 
 Seres sought recovery of Lerner’s book proceeds, imposition of a constructive trust and an accounting.
 

 The district court granted Lerner’s motion to dismiss Seres’s NRS 217.007 action under
 
 Simon & Schuster, Inc. v. Members of
 
 
 *931
 

 New York State Crime Victims
 
 Board,
 
 [3]
 
 a 1991 United States Supreme Court decision, which voided a similar Son of Sam statute based upon First Amendment considerations. Seres filed her timely notice of appeal. We affirm.
 

 DISCUSSION
 

 This appeal concerns Lerner’s successful challenge to the validity of NRS 217.007 under the First Amendment to the United States Constitution.
 

 Standard of review
 

 We presume that a statute is constitutional and review a statute’s constitutionality de novo.
 
 [4]
 
 The party challenging the statute bears the burden of proving that the statute is unconstitutional.
 
 [5]
 

 First Amendment jurisprudence dictates that legislatively created content-based restrictions on speech satisfy strict scrutiny review under which any such measure must address a compelling state interest and be narrowly tailored to achieve that interest.
 
 [6]
 
 Overinclu-sive content-based measures fail this level of scrutiny.
 

 Historical perspectives
 

 New York enacted the first Son of Sam law
 
 [7]
 
 in 1977, in response to the possibility that David Berkowitz, a serial killer popularly known as the Son of Sam, might sell the publication rights to his memoirs. The measure was calculated to ensure that monies received by criminals in connection with published storytelling about their criminal activities be made available to compensate victims.
 
 [8]
 
 The statute required that entities contracting with an “accused or convicted” person for the production of a work depicting his or her crime submit the contract to a crime victim’s board and turn over any income owed to the perpetrator to the board for deposit in an escrow account administered by the state.
 
 [9]
 
 The measure defined “persons convicted of a crime” in such a way as to include
 
 *932
 
 individuals who had never been accused or convicted.
 
 [10]
 
 A victim of the crime could then commence a civil suit to recover a money judgment against the perpetrator and obtain funds from the escrow account.
 
 [11]
 
 The statute also provided a right of recovery, based upon a hierarchy of priorities, by state victims’ compensation funds and/or the offender’s other creditors. Following New York’s lead, the federal government and a majority of states have enacted similar Son of Sam statutes.
 
 [12]
 

 In
 
 Simon & Schuster,
 
 the United States Supreme Court voided New York’s Son of Sam law as inconsistent with the First Amendment.
 
 [13]
 
 The Court first determined that the measure was “content-based” because “[i]t single[d] out income derived from expressive activity for a burden the State place[d] on no other income, and it [was] directed only at works with a specified content.”
 
 [14]
 
 Having determined that the measure was content based, the Court went forward with its strict scrutiny analysis, concluding that, while compensating victims of crimes and preventing profit from criminal wrongdoing were compelling state interests, the New York statute was not narrowly tailored to meet those goals because it applied to “a potentially very large number of works.”
 
 [15]
 
 More particularly, the Court found the statute significantly overin-clusive because it applied to the entirety of proceeds from works on any subject, provided that they expressed the author’s thoughts or recollections about his crime, however tangentially or incidentally, and regardless of whether the work was written for nonexploitative purposes.
 
 [16]
 
 The Court also found the New York statute overinclu-sive because the board could seize proceeds from works by persons never prosecuted or convicted, when the author included an admission in the published work.
 
 [17]
 
 In this, the Court noted, among other things, that the entire proceeds could be seized even though the act admitted did little harm.
 
 [18]
 
 In light of the
 
 Simon & Schuster
 
 
 *933
 
 decision, several state courts have examined the constitutionality of their respective Son of Sam laws.
 
 [19]
 

 Nevada’s Son of Sam statute
 

 The Nevada Legislature first enacted a Son of Sam law in 1981.
 
 [20]
 
 Like the New York statute, the initial Nevada legislation required payment of a felon’s publication proceeds into a fund to provide victim compensation and to prevent profiteering from criminal misconduct.
 
 [21]
 
 In 1993, the Nevada Legislature revised its Son of Sam statute, recodified as NRS 217.007, in an attempt “to address the constitutional issues raised in
 
 [Simon & Schuster].”
 

 [22]
 

 NRS 217.007 now provides:
 

 1. A victim may commence any action specified in NRS 11.190, 11.215 or 207.470 which arises from the commission of a felony, against the person who committed the felony within 5 years after the time the person who committed the felony becomes legally entitled to receive proceeds for any contribution to any material that is based upon or substantially related to the felony which was perpetrated against the victim.
 

 2. If the limitation period established in NRS 11.190, 11.215 or 207.520 has otherwise expired, the liability of the person committing the felony to a victim imposed under this section must be limited to the value of the proceeds received by the person who committed the felony for any contribution to material that is based upon or substantially related to the felony which was perpetrated against the victim.
 

 3. For purposes of this section:
 

 (a) “Material” means a book, magazine or newspaper article, movie, film, videotape, sound recording, interview or appearance on a television or radio station and live presentations of any kind.
 

 (b) “Proceeds” includes money, royalties, real property and any other consideration.
 

 (c) “Victim” means any person:
 

 
 *934
 
 (1) Against whom a crime has been committed;
 

 (2) Who has been injured or killed as a direct result of the commission of a crime; or
 

 (3) Who is the surviving spouse, a parent or a child of such a person.
 
 [23]
 

 The legislative history summarizes that the revision was designed to “extend[ ] the statute of limitations for a victim of a felony with respect to money or property gained by the offender as a result of notoriety.’ ’
 
 [24]
 
 Notably, the revisions eliminated the state-administered fund feature of the old legislation.
 

 The district court’s ruling
 

 The district court found a First Amendment violation despite its determination that NRS 217.007, a content-based restriction on speech, addresses compelling state interests in reimbursing crime victims and prohibiting profiteering from criminal activity. Given a distinct chilling effect upon an author’s incentive to create expressive conduct not covered by statute, the district court concluded that the Legislature failed to narrowly tailor the measure to those interests. Mirroring the strict scrutiny approach taken by the United States Supreme Court in
 
 Simon & Schuster,
 
 the court observed:
 

 NRS 217.007 is overinclusive. NRS 217.007 allows actions against proceeds from expressive conduct “substantially related to the felony which was perpetrated against the victim.” During the hearing on this matter, plaintiff’s counsel agreed that the statute would allow recovery of proceeds from a book that is two-thirds about prison experience or religious conversion and one-third about the felony resulting in imprisonment. NRS 217.007 would allow recovery of proceeds from a book that is ninety percent about religious matters and ten percent about the felony. Counsel from the Office of the Nevada Attorney General seemed to agree. The statute thereby achieves the compelling state interest of preventing a felon from profiting by commission of a felony. However, it does so by chilling the incentive to create expressive conduct that has little or no relationship to the exploitation of criminal misdeeds. . . . Thus, NRS 217.007 . . . cannot survive the strict scrutiny analysis.
 
 [25]
 

 
 *935
 
 The parties raise issues concerning whether NRS 217.007 involves state action, is content based, and narrowly addresses compelling state interests. Because our agreement with the district court overturns a comprehensive piece of state legislation enacted with a most salutary purpose, this opinion separately resolves each of the First Amendment issues raised by the parties.
 

 State action
 

 It is fundamental that “the First Amendment protects individuals only against government, not private, infringements upon free speech rights.”
 
 [26]
 
 We have recognized that the First Amendment only applies to the abridgment of the right of free speech by the federal or state government.
 
 [27]
 
 Thus, to apply to the states, the infringement must involve state action.
 
 [28]
 

 Appearing as amicus curiae, the Attorney General posits that NRS 217.007 does not involve state action because it involves “no direct regulation of expressive conduct by the State,” does not provide for automatic confiscation of funds by the state, and authorizes no mechanism for the state to take any action against the offender. From this, both Seres and the Attorney General argue that the 1991 revisions deleting the state-fund provision that marked the original Nevada legislation eliminated any vestige of state action. Lerner argues that NRS 217.007 is a statute of general applicability, implicating state action.
 

 Certainly, in contrast to the New York Son of Sam statute, NRS 217.007 does not provide for direct confiscation by the state for placement of proceeds received by the offender in a state-managed escrow account. We conclude, however, that judicial enforcement of state legislation involves state action restricting speech implicating the First Amendment. As noted below, NRS 217.007 legislatively creates an independent cause of action that contemplates enforcement under the state’s levy and execution statutes. Thus, while NRS 217.007 eliminated state confiscation and administration of funds that marked Nevada’s first Son of Sam legislation, the measure still implicates state action for First Amendment purposes.
 
 [29]
 

 
 *936
 

 Content-based restriction
 

 As stated in
 
 Simon & Schuster,
 
 “[a] statute is presumptively inconsistent with the First Amendment if it imposes a financial burden on speakers because of the content of their speech.”
 
 [30]
 
 A statute is neutral if it serves objectives that are not related to the expression’s content, even though it might unintentionally affect certain speakers or messages.
 
 [31]
 
 However, if the proposed expression’s contents must be reviewed in order to determine whether the statute applies, then the statute is a content-based restriction on speech.
 
 [32]
 
 And, as noted, the
 
 Simon & Schuster
 
 Court concluded that the New York Son of Sam law was content based because it “single[d] out income derived from expressive activity for a burden the State place[d] on no other income, and it [was] directed only at works with a specified content.’ ’
 
 [33]
 

 In line with
 
 Simon & Schuster,
 
 we conclude that, to the extent NRS 217.007 allows the filing of claims after the expiration of statutes of limitation for wrongful death and other tort claims, it is a content-based statute.
 
 [34]
 
 First, the Nevada Son of Sam statute explicitly and exclusively applies to income received from speech concerning the crime committed. Second, the Attorney General’s theory that NRS 217.007 merely extends the statute of limitations
 
 *937
 
 governing tort actions is unpersuasive because that extension exclusively relates to proceeds of public expression.
 
 [35]
 
 Accordingly, NRS 217.007 places a direct financial burden only on speech with a specified and particular content, that being reference to the felony itself. Because NRS 217.007 is a content-based restriction on speech, the statute must pass a strict scrutiny level of review, in line with relevant case authority.
 

 Strict scrutiny/overinclusiveness
 

 We agree with the parties that Nevada has compelling interests in the compensation of crime victims and in the prevention of direct profiteering from criminal misconduct.
 
 [36]
 
 Consequently, we consider whether the Nevada Legislature narrowly tailored NRS 217.007 to meet these compelling interests.
 

 Given the elimination of the former provisions requiring the payment of “proceeds” into a state fund, two aspects of NRS 217.007 give rise to a strict scrutiny analysis under
 
 Simon & Schuster:
 
 first, that the victim’s ability to recover the proceeds from “any contribution to any material that is based upon or substantially related to the felony,” and second, that potential defendants in NRS 217.007 actions need not have been convicted for the crime against the victim.
 

 
 *938
 
 In
 
 Keenan v. Superior Court,
 
 the Supreme Court of California considered a statute that imposed an involuntary trust
 
 [37]
 
 upon
 
 “all
 
 a convicted felon’s proceeds from speech or expression on
 
 any
 
 theme or subject which includes the story of the felony,
 
 except by mere passing
 
 mention. ”
 
 [38]
 
 Relying primarily upon
 
 Simon & Schuster,
 
 the court struck down the statute because it
 

 entrusts and permanently confiscates all income, whenever received, from all expressive materials, whatever their subject, theme, or commercial appeal, that include a substantial description of such offenses, whatever their nature and however long in the past they were committed.
 
 [39]
 

 NRS 217.007 places no direct restraint on speech and does not provide for sequestration of funds and administration of them by a state agency. However, similar to the California law stricken in
 
 Keenan,
 
 NRS 217.007 provides for recovery of proceeds from “any contribution to any material that is based upon or substantially related to the felony.” Accordingly, the primary impediment to its validity stems from its potential application to works only partially or tangentially related to the crime committed. As noted, Seres concedes that the entire proceeds from Lerner’s book are subject to recovery under NRS 217.007, and that the book only partially relates to the events leading up to and including the homicide of Mr. Slavin. Thus, although NRS 217.007 does not restrict a felon from engaging in whatever speech or expression he desires, it penalizes that speech based upon its discrete content by seizing all proceeds, regardless of the extent to which the work relates to the crime against the victim.
 
 [40]
 
 This breadth of coverage violates
 
 Simon & Schuster.
 

 Given this statutory predicament, the Attorney General would have us narrowly interpret NRS 217.007 to achieve constitutional harmony. In this, the Attorney General suggests our embrace of the view that the statute simply extends the applicable statute of limi
 
 *939
 
 tations with a limitation on such recoveries, and that the statute really adds nothing substantive to preexisting tort remedies. As discussed below, we reject that notion. Exploring other attempts at narrowing the reach of NRS 217.007, we could restrict its scope to apportioned proceeds directly related to the felon’s speech concerning his misconduct, giving the ability to attach only those proceeds substantially related to the felony.
 
 [41]
 
 This would involve a rewriting of NRS 217.007 by judicial fiat, limiting recoverable damages under the measure to “[the portion of] proceeds received ... for any contribution to material . . . based upon or substantially related to the felony.”
 
 [42]
 
 Unfortunately, this approach is unworkable. Judges and juries sitting as fact-finders could not possibly apportion the publication proceeds with any real certainty, leaving the distinct possibility that such apportionments would of necessity encompass proceeds from portions of works not calculated to exploit criminal misconduct. Accordingly, in the absence of a practicable restriction on the statutory language, the measure improperly chills nonex-ploitative expression unrelated to the crime. We therefore cannot narrowly tailor NRS 217.007 by judicial interpretation to cure its overinclusiveness.
 

 Addressing the second aspect of NRS 217.007 that implicates
 
 Simon & Schuster,
 
 the provision does not restrict the realm of possible defendants to convicted felons. In
 
 Opinion of the Justices to the Senate,
 
 the Supreme Judicial Court of Massachusetts addressed a proposed statutory definition of a defendant as ‘“a person who is the subject of pending criminal charges or has been convicted of a crime or has voluntarily admitted the commission of a crime.’ ”
 
 [43]
 
 The court concluded that the proposed Massachusetts statute was “significantly overinclusive” because it would extend to persons never charged with any crime.
 
 [44]
 
 Similarly, in
 
 Simon & Schuster,
 
 the United States Supreme Court voided the following provision as overinclusive:
 

 “any person convicted of a crime in [New York] either by entry of a plea of guilty or by conviction after trial
 
 and any person who has voluntarily and intelligently admitted the commission of a crime for which such person is not
 
 prosecuted.”
 
 [45]
 

 
 *940
 
 In holding that this aspect of the New York statute failed strict scrutiny, the Court made the following observation:
 

 Should a prominent [unaccused or unconvicted] figure write his autobiography at the end of his career, and include in an early chapter a brief recollection of having stolen ... a nearly worthless item as a youthful prank, the Board would control his entire income from the book for five years, and would make that income available to all of the author’s creditors, despite the fact that the statute of limitations for this minor incident had long since run. That the Son of Sam law can produce such an outcome indicates that the statute is, to say the least, not narrowly tailored to achieve the State’s objective of compensating crime victims from the profits of crime.
 
 [46]
 

 We conclude that the express application of the Nevada statute to the “person who committed the felony” suffers from the same defect as identified in
 
 Simon & Schuster
 
 and
 
 Opinion of the Justices.
 

 [47]
 

 First, NRS 217.007 provides no definition of “the person who committed the felony.” Second, the statute contains no conviction qualifier. This said, in light of the Legislature’s attempts in the recodification of NRS 217.007 to comply with
 
 Simon & Schuster,
 
 we could narrowly construe this statute and limit its scope to convicted felons.
 
 [48]
 
 However, this construction would only address one of the overinclusivity problems identified in
 
 Simon & Schuster
 
 and its progeny. Accordingly, a narrow construction limiting NRS 217.007 to publication proceeds generated by convicted felons would not rescue the measure from its primary infirmity— overinclusiveness.
 

 Argument by the Attorney General that NRS 217.007simply extends the statute of limitations governing actions in tort
 

 The Attorney General argues that NRS 217.007 simply extends the statute of limitations otherwise applicable to tort claims with a limitation on damages, and thus creates no new or separate cause of action.
 
 [49]
 
 From this, the Attorney General reasons that the measure is content neutral and creates no overbreadth problems under the First Amendment. We disagree.
 

 
 *941
 
 Certainly, to the extent that a victim may bring a traditional cause of action for personal injury, property loss or wrongful death within the applicable statute of limitations for such matters, Nevada levy and execution laws concerning the felon’s misconduct, provide for execution against proceeds from publications,' along with any other nonexempt assets. Thus, aside from the possibility that recoveries under NRS 217.007 may exceed the value of judgments rendered in connection with traditional tort-based actions, the provision adds nothing to the remedies previously available to victims, in terms of assets subject to execution upon judgments. Accordingly, to the extent that a claimant would file suit under NRS 217.007 before expiration of the statutes of limitations cited within it, subject to the single exception noted immediately above, the provision is a nullity for First Amendment purposes.
 
 [50]
 

 However, to the extent that NRS 217.007 operates after expiration of a particular limitation period, it creates a separate cause of action that limits victims to recovery of a felon’s publication proceeds. First, the statutory cause of action arises upon the felon’s entitlement to proceeds from published material, not the actual harm inflicted upon the victim. Second, awards under this statute would not be restricted in any way by the law of damages governing traditional causes of action in tort. More particularly, although damages awarded under NRS 217.007 are limited to publication proceeds, such an award could exceed a tort-based damage award. Going further, while NRS 217.007(1) stipulates that the victim may commence any action specified in NRS 11.190, NRS 11.215 or NRS 207.470 upon the felon’s entitlement to publication proceeds, this language only defines the nature of a victim’s liability claim.
 
 [51]
 
 In short, entitlement to proceeds stimulates the viability of the new cause of action; thus, NRS 217.007 does not renew or revive a wrongful death claim otherwise barred by the statutes of limitation recited within it. We therefore conclude that this new cause of action expands upon traditional content-based remedies that exist separate and apart from NRS 217.007. In this expansion, the constitutional infirmities identified above mandate our declaration today that the measure fails to meet First Amendment muster.
 

 CONCLUSION
 

 The United States Supreme Court in
 
 Simon & Schuster
 
 voided the New York Son of Sam legislation under the First Amendment based upon blanket and total confiscation of proceeds from
 
 *942
 
 content-based works, regardless of incidental references to the crime committed, and regardless of whether the author sustained a conviction in connection with an offense against a crime victim.
 

 We conclude that NRS 217.007 is a content-based restriction on speech, the validity of which is subject to
 
 Simon & Schuster’s
 
 strict scrutiny analysis. Although the measure addresses compelling state interests in compensating victims and prevention of criminal profiteering, it suffers from overinclusiveness because it regulates more speech than is necessary to serve the state’s interest. Clearly, NRS 217.007 allows recovery of proceeds from works that include expression both related and unrelated to the crime, imposing a disincentive to engage in public discourse and nonexploitative discussion of it.
 
 [52]
 
 We therefore hold that NRS 217.007 violates the First Amendment of the United States Constitution.
 

 Finally, although we have analyzed NRS 217.007 under a complex strict scrutiny analysis required by a majority of justices in
 
 Simon & Schuster,
 
 we are mindful of the internal debate within the Supreme Court concerning the propriety of the strict scrutiny approach in First Amendment cases. In his concurrence to
 
 Simon & Schuster,
 
 Justice Kennedy resurrects the controversy over whether First Amendment jurisprudence should continue to use equal protection considerations, such as strict scrutiny and whether compelling state interests are narrowly addressed, when the primary issue concerns content-based restrictions on speech. In this, he observes:
 

 The New York statute . . . imposes severe restrictions on authors and publishers, using as its sole criterion the content of what is written. The regulated content has the full protection of the First Amendment and this, I submit, is itself a full and sufficient reason for holding the statute unconstitutional. In my view it is both unnecessary and incorrect to ask whether the State can show that the statute “ ‘is necessary to serve a compelling state interest and is narrowly drawn to achieve that end.’ ” That test or formulation derives from our equal protection jurisprudence, and has no real or legitimate
 
 *943
 
 place when the Court considers the straightforward question whether the State may enact a burdensome restriction of speech based on content only, apart from any considerations of time, place, and manner or the use of public forums.
 

 Here, a law is directed to speech alone where the speech in question is not obscene, not defamatory, not words tantamount to an act otherwise criminal, not an impairment of some other constitutional right, not an incitement to lawless action, and not calculated or likely to bring about imminent harm the State has the substantive power to prevent. No further inquiry is necessary to reject the State’s argument that the statute should be upheld.
 

 Borrowing the compelling interest and narrow tailoring analysis is ill advised when all that is at issue is a content-based restriction, for resort to the test might be read as a concession that States may censor speech whenever they believe there is a compelling justification for doing so. Our precedents and traditions allow no such inference.
 

 The inapplicability of the compelling interest test to content-based, restrictions on speech is demonstrated by our repeated statement that “above all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.”
 

 [53]
 

 While this approach is inviting, a majority of the Supreme Court has rejected it, and the parties to this appeal have not requested that we resolve this matter as one of Nevada constitutional law in line with Justice Kennedy’s views. We will therefore defer consideration of this simpler approach for future litigation.
 

 In light of the above, we affirm the district court order dismissing the action below.
 

 Shearing, C. J., Agosti, Rose, Becker and Gibbons, JJ., concur.
 

 502 U.S. at 124-26 (Kennedy, J., concurring in judgment) (emphasis added) (citations omitted).
 

 [2]
 

 See
 
 NRS 11.190.
 

 [3]
 

 502 U.S. 105 (1991).
 

 [4]
 

 United States v. State Engineer,
 
 117 Nev. 585, 603, 27 P.3d 51, 62 (2001) (Becker, J., concurring in part and dissenting in part).
 

 [5]
 

 Id.
 
 (Becker, J., concurring in part and dissenting in part).
 

 [6]
 

 Simon & Schuster,
 
 502 U.S. at 118.
 

 [7]
 

 See
 
 N.Y. Exec. Law § 632-a(l) (McKinney 1982).
 

 [8]
 

 Simon & Schuster,
 
 502 U.S. at 109.
 

 [9]
 

 Id.
 

 [10]
 

 Id.
 
 at 110.
 

 [11]
 

 Id.
 
 at 109-10; N.Y. Exec. Law §§ 632-a(4), 632-a(7) (McKinney 1982).
 

 [12]
 

 Simon & Schuster,
 
 502 U.S. at 115;
 
 see
 
 18 U.S.C. § 3681 (2000); Karen M. Ecker & Margot J. O’Brien, Note,
 
 Simon & Schuster, Inc. v. Fischetti: Can New York’s Son of Sam Law Survive First Amendment Challenge?,
 
 66 Notre Dame L. Rev. 1075, 1075-76 n.6 (1991) (listing the federal government and approximately forty states as having passed similar laws to redirect criminal profits).
 

 [13]
 

 502 U.S. at 115, 123.
 

 [14]
 

 Id.
 
 at 116.
 

 [15]
 

 Id.
 
 at 121.
 

 [16]
 

 Id.
 
 at 121-22.
 

 [17]
 

 Id.
 
 at 121.
 

 [18]
 

 Id.
 
 at 123.
 

 [19]
 

 E.g., Keenan
 
 v.
 
 Superior Court,
 
 40 P.3d 718, 731 (Cal. 2002) (declaring California’s Son of Sam statute unconstitutional under the First Amendment);
 
 In re Opinion of the Justices to the Senate,
 
 764 N.E.2d 343 (Mass. 2002) (ruling that proposed Son of Sam legislation violated the right of freedom of speech of both the federal and state constitutions);
 
 Bouchard v. Price,
 
 694 A.2d 670 (R.I. 1997) (concluding that the criminal royalties act was inconsistent with the First Amendment).
 

 [20]
 

 See
 
 NRS 217.265 (repealed 1993 and replaced by NRS 217.007).
 

 [21]
 

 Nevada Legislative Counsel Bureau, Research Div., 67th Leg., Summary of Legislation 2 (Nev. 1993).
 

 [22]
 

 Id.; see also
 
 S.B. 291, 67th Leg. (Nev. 1993).
 

 [23]
 

 Seres, as Mr. Slavin’s sister, does not qualify as a victim under NRS 217.007(3)(c), but her mother, on whose behalf Seres sued, does qualify.
 

 [24]
 

 Nevada Legislative Counsel Bureau, Research Div., 67th Leg., Summary of Legislation 2 (Nev. 1993).
 

 [25]
 

 The district court additionally concluded that NRS 217.007 is underinclu-sive,
 
 i.e.,
 
 so narrowly tailored that it fails to support a compelling state interest. Because we conclude that NRS 217.007 is overinclusive and therefore can
 
 *935
 
 not be so construed as to satisfy a strict scrutiny review, we need not address the district court’s additional determination that the statute is underinclusive.
 

 [26]
 

 George v. Pacific-CSC Work Furlough,
 
 91 F.3d 1227, 1229 (9th Cir. 1996);
 
 see also Rendell-Baker
 
 v.
 
 Kohn,
 
 457 U.S. 830, 837 (1982).
 

 [27]
 

 S.O.C., Inc. v. The Mirage Casino-Hotel,
 
 117 Nev. 403, 410, 23 P.3d 243, 247 (2001).
 

 [28]
 

 Id.
 

 [29]
 

 See Lugar
 
 v.
 
 Edmondson Oil Co.,
 
 457 U.S. 922 (1982).
 

 [30]
 

 502 U.S. at 115 (citing
 
 Leathers v. Medlock,
 
 499 U.S. 439, 447 (1991)).
 

 [31]
 

 State ex rel. Napolitano
 
 v.
 
 Gravano,
 
 60 P.3d 246, 252 (Ariz. Ct. App. 2002);
 
 see Renton
 
 v.
 
 Playtime Theatres, Inc.,
 
 475 U.S. 41, 47-48 (1986) (content-neutral regulations of speech are subject to an intermediate level of scrutiny, thus they must further an important governmental interest that is unrelated to the suppression of free speech and any incidental burden on free speech is no greater than necessary to further that interest).
 

 [32]
 

 Opinion of the Justices,
 
 764 N.E.2d at 348.
 

 [33]
 

 502 U.S. at 116;
 
 see also Keenan,
 
 40 P.3d at 728 (holding that a statute was content based because it “explicitly targets and confiscates a convicted felon’s proceeds” from speech or expressive conduct that includes the story of the felon’s crime);
 
 Opinion of the Justices,
 
 764 N.E. 2d at 347-48 (concluding that proposed bill was a content-based regulation because it ‘ ‘burdens only expression with a particular content” and placed a financial burden on the speakers based upon the content of their speech);
 
 Bouchard,
 
 694 A.2d at 676 (concluding that the statute was content-based regulation because of its “singular focus on the content of an expressive activity”).
 

 [34]
 

 In her claim of content-neutrality, Seres relies upon
 
 State ex rel. Napolitano
 
 v.
 
 Gravano,
 
 60 P.3d 246, 251 (Ariz. Ct. App. 2002), in which the Arizona Court of Appeals addressed whether the forfeiture of book royalties under a racketeering statute violated the guarantee of freedom of speech. Seres’s reliance upon
 
 Napolitano
 
 is misplaced. NRS 217.007 is not a racketeering statute of general application and relates solely to compensation generated from expressions concerning the perpetrator’s crime against the victim. NRS 217.007(1), (2).
 

 [35]
 

 NRS 217.007 is probably content neutral to a narrow degree that is not implicated in this case. If the victim commences litigation against the perpetrator within the applicable statute of limitations governing actions in tort, and the plaintiff obtains a traditional damage recovery, the victim may execute upon any asset held by the perpetrator, regardless of its source. Thus, to the extent that NRS 217.007 allows execution upon proceeds from published works concerning the crime in the context of ordinary tort litigation, it adds nothing to the general content-neutral civil remedies for felonious misconduct that preexisted its enactment. Having said this, to the extent that the measure would allow recovery in an amount in excess of a traditional tort-based recovery,
 
 see
 
 discussion
 
 infra,
 
 it remains a content-based restriction on speech.
 

 [36]
 

 NRS 217.007 limits recoveries to the proceeds of the felon’s speech concerning the crime committed against the victim. In this connection, the Court in
 
 Simon & Schuster
 
 observed:
 

 The Board cannot explain why the State should have any greater interest in compensating victims from the proceeds of such “storytelling” than from any of the criminal’s other assets. Nor can the Board offer any justification for a distinction between this expressive activity and any other activity in connection with its interest in transferring the fruits of crime from criminals to their victims. Thus even if the State can be said to have an interest in classifying a criminal’s assets in this manner, that interest is hardly compelling.
 

 502 U.S. at 119-20. Based upon this observation, the Court restricted its “narrowing” analysis to considerations of victim compensation and prevention of criminal profiteering.
 
 Id.
 
 at 116-20;
 
 see also, Keenan,
 
 40 P.3d at 728;
 
 Opinion of the Justices,
 
 764 N.E.2d at 349-50;
 
 Bouchard,
 
 694 A.2d at 676. We have limited our “narrowing” analysis accordingly.
 

 [37]
 

 40 P.3d at 721;
 
 see also Simon & Schuster,
 
 502 U.S. at 108-09 (all proceeds are placed in a state-established escrow account);
 
 Opinion of the Justices,
 
 764 N.E.2d at 350 (the income derived from materials which were substantially related to a crime were placed in a state-established escrow account);
 
 Bouchard,
 
 694 A.2d at 673 (“profits that a criminally responsible person would otherwise collect from the commercial exploitation of a felony are diverted to a criminal royalties fund”).
 

 [38]
 

 40 P.3d at 731 (third emphasis added).
 

 [39]
 

 Id. at 732-33.
 

 [40]
 

 Cf. Com. v. Power,
 
 650 N.E.2d 87, 90 (Mass. 1995) (stating that a probationary condition did not implicate First Amendment rights because it allowed the defendant to speak on any subject desired, but permissibly prohibited the defendant from profiting financially from speech regarding the crimes).
 

 [41]
 

 See State of Nevada v. Glusman,
 
 98 Nev. 412, 419, 651 P.2d 639, 644 (1982) (stating that “statutes should be construed, if reasonably possible, so as to be in harmony with the constitution”).
 

 [42]
 

 NRS 217.007(2).
 

 [43]
 

 764 N.E.2d at 345 (quoting S. B. 1939, proposed Mass. Gen. Laws ch. 258D, § 1 (2001)).
 

 [44]
 

 Id.
 
 at 348-49.
 

 [45]
 

 502 U.S. at 110 (quoting N.Y. Exec. Law § 632-a(10)(b) (McKinney Supp. 1991) (emphasis added)).
 

 [46]
 

 Id.
 
 at 123.
 

 [47]
 

 The measure in
 
 Keenan
 
 only applied to convicted felons.
 

 [48]
 

 See
 
 A.B. 268, 63d Leg. (Nev. 1985) (amended to add “[i]f an offender has been convicted of the crime which resulted in the injury to the victim, the judgment of conviction is conclusive evidence of all facts necessary to impose civil liability for the injury”).
 

 [49]
 

 Seres filed an amended complaint, which included a wrongful death cause of action against Lerner.
 

 [50]
 

 See
 
 supra
 
 note 36.
 

 [51]
 

 See
 
 NRS 41.133 (“If an offender has been convicted of the crime which resulted in the injury to the victim, the judgment of conviction is conclusive evidence of all facts necessary to impose civil liability for the injury.”).
 

 [52]
 

 At the oral argument of this appeal, Lerner’s counsel stressed that Lerner would never have written his book had he known of the financial disincentives of NRS 217.007. Interestingly, Lerner renounces this representation in his “forward to the paperback edition” in the following terms:
 

 Money was not a factor in writing the book. I wrote to save my sanity, to save my life. For a long time I was just keeping a diary, a journal. I finally wanted it published because I felt I had something important to say.
 

 Jimmy Lerner,
 
 You Got Nothing Coming
 
 — Notes
 
 From a Prison Fish,
 
 XV (Broadway Books 2003). The lack of any actual chilling effect on Lerner’s First Amendment rights does not obviate his challenge to the facial validity of NRS 217.007.