FAY et al. v. LAMBOURNE et al.

(Supreme Court, Appellate Division, First Department. February 7, 1908.)

1. TRADE-NAMES—INFRINGEMENT—DECEPTION OF PUBLIC.
    The right to a name used by persons in their calling is similar to the right to the use of a trade-mark, which right equity will not protect where the name or phrase claimed as such is intended and calculated to deceive the public.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 25.]

2. SAME.
    Persons engaged in deceiving the public by pretending to tell fortunes have no property right in a name or appellation assumed in their business which a court of equity will protect, since a party invoking such protection must himself be free from fraud in his representations to the public.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 25.]

3. DISORDERLY CONDUCT—PRETENDING TO TELL FORTUNES.
    Under the express provisions of Cr. Code, § 899, subd. 3, persons who pretend to tell fortunes are disorderly persons.

4. SAME—PRETENSE OF OCCULT POWERS.
    The pretense of occult powers and the ability to answer confidential questions from spiritual aid is a fraud upon the public.

5. EQUITY—PRINCIPLES—FREEDOM FROM FRAUD OF COMPLAINANT.
    Equity will not adjust differences between wrongdoers, but will first judge complainant; and not until he is found guiltless will the court proceed to determine whether or not he has been wronged.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, §§ 185–187.]

Appeal from Special Term, New York County.

Action by John T. Fay and another against Herbert D. Lambourne .and another. Judgment for plaintiffs, and defendants appeal. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and McLAUGHLIN, IN-GRAHAM, LAUGHLIN, and HOUGHTON, JJ.

Charles Goldzier, for appellants.

Franklin Bien, for respondents.

HOUGHTON, J. For a number of years the plaintiffs, who are husband and wife, have given entertainments throughout the country under the name of "The Fays." While certain sleight of hand tricks are interspersed, the principal performance consists, as the record discloses, of alleged mind reading and the telling of past as well as future events. This consists of answering by the wife of written questions propounded by auditors. Ability to answer these questions and to foretell the future is pretended to come from supernatural powers possessed by her. If any one in the audience desires to propound a question of a private nature, he or she is given the privilege of doing so by purchasing Mrs. Fay's "Thaumaturgy Dream Book," to which is attached a blank coupon, with instructions for filling out. No guarantee is given that these questions will be answered; but an assurance is given that they will be, if the spirit so moves. The mysterious character of the performance is such that numerous questions are propounded of a most confidential and personal nature. Upon their receipt they are turned over to employés, who are told to answer them as they see fit. From the evidence it would appear that the plaintiffs have the reputation of giving a most mystifying entertainment.

The defendants are former employés who, having learned how plaintiffs' performances were given, themselves gave performances explaining plaintiffs' tricks and exposing their alleged occult powers. In their advertising notices and bill posters, although stating it was an exposé, they gave prominence to the words "The Fays," or "The Phays," as they sometimes spelled it, to such an extent that certain persons were deceived in the advertisement and went to the performance thinking they were going to see and hear the Fays themselves. This action was brought to restrain the defendants from using the name "The Fays" in any manner in their advertisements and posters, and especially in such manner as to mislead the public into believing that a performance by the plaintiffs was being had, and has resulted in a permanent injunction enjoining the defendants from so doing.

If the injunction was to stand, it is altogether too broad, and evidently much broader than the trial judge intended it should be from his memorandum decision. By that memorandum it was stated that the defendants should be enjoined only from using the words in such way as to mislead the public; but by the injunction granted the defendants are restrained from using plaintiffs' name in any way. The situation disclosed, however, is such that equity should not interfere at all. The plaintiffs are engaged in deceiving the public, and the most entertaining part of their performance is, in effect, fortune telling.

In such a business they can get no property rights in a name or appellation which a court of equity will protect. The property right which the plaintiffs assert they have in the term "The Fays," and which they would have if their business was without deception, is similar to the right to the use of a trade-mark. Equity will not interfere to protect a party in the use of a trade-mark, where the name or phrase claimed as such is intended and calculated to deceive the public. Fetridge v. Wells, 4 Abb. Prac. 144; Gluckman v. Strauch, 99 App. Div. 361, 91 N. Y. Supp. 223. A party invoking the aid of equity to restrain the infringement of a trade-mark must himself be free from fraud in his representations to the public. P. M. Co. v. P. M. P. Co., 135 N. Y. 24, 31 N. E. 990, 17 L. R. A. 129.

Persons who pretend to tell fortunes are defined to be disorderly persons. Cr. Code, § 899. The pretense of occult powers and the ability to answer confidential questions from spiritual aid is as bad as fortune telling, and a species of it, and is a fraud upon the public. It is no answer, so far as the plaintiffs are concerned, that no one ought to believe the pretenses. It is the half doubt and the half belief of a certain class of people that make and hold the audiences. If every one wholly disbelieved, curiosity would be soon satisfied, and the entertainment lose its attraction.

Nor is it any answer to say that the defendants are themselves guilty of wrong. Equity does not adjust the differences between rogues. The complainant is first judged, and not until he has been found free from taint does equity proceed to determine whether or not he has been wronged. The injunction should not have been granted.

The judgment is reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.