996 A.2d 850

Nick NEFEDRO

v.

MONTGOMERY COUNTY, Maryland, et al.

No. 84, Sept. Term, 2009.

Court of Appeals of Maryland.

June 10, 2010.

586

588

---

Edward Amourgis (Edwards Phillip Amourgis, PC of Rockville, MD), on brief, for appellant.

Ajmel Quereshi (Deborah A. Jeon, ACLU of Maryland Foundation of Baltimore, MD), on brief, for appellant.

Clifford L. Royalty, Chief, Division of Zoning, Land Use & Economic Development (Leon Rodriguez, County Atty., Marc P. Hansen, Deputy County Atty., and Edward B. Lattner, Chief, Division of Human Resources & Appeal, of Rockville, MD), on brief, for appellees.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

GREENE, J.

The petitioner in this case, Nick Nefedro, wishes to open a fortunetelling business in Montgomery County. Montgomery County, however, has an ordinance ("the Fortunetelling Ordinance") that prohibits the acceptance of remuneration for fortunetelling. Nefedro has asked us to determine whether the Fortunetelling Ordinance violates his right to freedom of speech under the First Amendment to the United States Constitution and Article 40 of the Maryland Declaration of Rights. Montgomery County argues that the Ordinance does not implicate those constitutional provisions or, in the alternative, that it is consistent with the federal and state constitutions. After reviewing the facts of the case and the relevant sources of law, we shall agree with Nefedro.

## PROCEDURAL HISTORY

This case arose in the Circuit Court for Montgomery County. On May 28, 2008, Nefedro filed suit against the County and Isiah Leggett, the County Executive for Montgomery County (collectively, "the County"). In his complaint, Nefedro challenged the Fortunetelling Ordinance on the grounds that it violates the First Amendment and Article 40 of the Maryland Declaration of Rights. The parties filed cross-motions for summary judgment, as well as oppositions and replies to those motions. On December 11, 2008, the trial court granted summary judgment in favor of the County, concluding that the Fortunetelling Ordinance is constitutional. Nefedro noted a timely appeal to the Court of Special Appeals. Before the intermediate appellate court had an opportunity to hear arguments in the case, we issued a writ of certiorari on our own motion. *Nefedro v. Montgomery County,* 410 Md. 165, 978 A.2d 245 (2009).

## FACTS

The following facts are not in dispute. Nefedro is engaged in the fortunetelling business in several locations across the country. In this business, he charges customers a fee in

exchange for fortunetelling, palm reading, and other related services. Nefedro has stated that he intends to open a location for his fortunetelling business in Montgomery County.

There is some dispute about what Nefedro has done in furtherance of his expressed intent to open a business in Montgomery County. Nefedro claims that he leased property in Montgomery County, paid rent on the property, purchased furnishings for the property, placed a sign in the storefront announcing that the fortunetelling business would soon open, and attempted to acquire a business license from the Montgomery County Licensing Department. Nefedro says that the supervisor of the Licensing Department denied his request for a license, citing the Fortunetelling Ordinance. The County argues that these claims are unsupported by the record, and, indeed, there is nothing in the record to support Nefedro's claims other than his own assertions. In addition, the County argues that, if anything, Nefedro's assertions suggest that he requested a license from the Montgomery County Circuit Court, not the County itself.[1]

There is no dispute that the Fortunetelling Ordinance prohibits the acceptance of remuneration for the performance of fortunetelling. The Ordinance states:

Fortunetelling.

Every person who shall demand or accept any remuneration or gratuity for forecasting or foretelling or for pretending to forecast or foretell the future by cards, palm reading or any other scheme, practice or device shall be subject to punishment for a class B violation as set forth in section 1–19 of chapter 1 of the County Code; and in any warrant for

---

1. In his answers to interrogatories, Nefedro states that he sought a business license from a supervisor in the Montgomery County Licensing Department, at the address, "Montgomery County Circuit Court, 50 Maryland Avenue, Rockville, MD 20850." The County argues that this statement shows that Nefedro applied for a license from the Circuit Court for Montgomery County, not Montgomery County itself. Nefedro responds by asserting that the Licensing Department is located at the Circuit Court for Montgomery County. As we explain in this opinion, this factual dispute is immaterial to our resolution of the case.

a violation of the above provisions, it shall be sufficient to allege that the defendant forecast or foretold or pretended to forecast or foretell the future by a certain scheme, practice or device without setting forth the particular scheme, practice or device employed; provided, that this section shall not apply to any benefit performance or part thereof conducted pursuant to section 30–4 of this Code. Montgomery County Code, § 32–7 (1999).

Nefedro filed suit against the County. In his suit, Nefedro asked the court for a declaratory judgment, pursuant to Maryland Code (1973, 2006 Repl. Vol.), § 3–406 of the Courts and Judicial Proceedings Article, stating that the Fortunetelling Ordinance violates his First Amendment right to freedom of speech and Article 40 of the Maryland Declaration of Rights.[2] The parties subsequently filed various motions, including cross-motions for summary judgment, and the trial court held a hearing on the summary judgment motions. At the hearing, the court concluded that the Fortunetelling Ordinance was constitutional, denied Nefedro's motion for summary judgment, and granted the County's motion for summary judgment. The court stated:

All right. Well, I think this is essentially a police power being exercised by Montgomery County. And, certainly, under its police power it has the right to regulate this type of activity. It's a commercial transaction and even the intermediary [sic] test of this ordinance meets the standard.

So, it certainly has a substantial interest. It's been demonstrated that the regulation directly and materially advances the substantial interests and it is narrowly drawn. It is not prohibiting the speech. It is simply regulating it.

In its written order granting the County's motion for summary judgment, the trial court stated:

---

**2.** Nefedro later amended his complaint to also allege a claim, pursuant to 42 U.S.C. § 1983 (2006), that Leggett, individually, had deprived Nefedro of his First Amendment rights. He also requested attorneys fees, pursuant to 42 U.S.C. § 1988. These matters are not before this Court.

[T]he County fortunetelling law ... is constitutional. The County law regulates speech, not conduct. And, insofar as the County law does regulate speech, it is narrowly drawn to serve the County's compelling governmental interest in protecting its citizenry from fraud.

Nefedro appealed the trial court's ruling. While the case was before the Court of Special Appeals, we granted certiorari on our motion to answer the following question:

Did the trial court err in finding that Montgomery County Code § 32–7, criminalizing the demand or receipt of payment for fortunetelling, does not violate the First Amendment to the U.S. Constitution and Article 40 of the Declaration of Rights of the Maryland Constitution?

After receiving briefs and hearing arguments from both parties, we answer this question in the affirmative and reverse the judgment of the Circuit Court.

## DISCUSSION

### I.

### Standing

■ As an initial matter, the County argues that Nefedro lacks standing to challenge the Fortunetelling Ordinance. In "a multitude of cases," this Court has "recognize[d] the availability of actions for declaratory judgments or injunctions challenging the validity of statutes or regulations which may, in the future, be applied to or adversely affect the plaintiffs." *Jackson v. Millstone*, 369 Md. 575, 588–90, 801 A.2d 1034, 1042–43 (2002) (citing many cases).[3] Our decision in *State v. Lundquist*, 262 Md. 534, 278 A.2d 263 (1971), demonstrates this principle in regard to a freedom of speech challenge. In *Lundquist*, we concluded that there was standing to challenge a statute requiring participation in a flag salute based entirely

---

**3.** Nefedro argues that he has standing pursuant to the three-prong test described by the United States Supreme Court in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351, 364 (1992). That test sets forth the prudential requirements for standing in federal court, but it is not applicable to state courts.

on one plaintiff's statement that he and his son objected to and would not participate in the ceremony. 262 Md. at 539–40, 278 A.2d at 266–67. In reaching that conclusion, we noted "the obvious chilling effect on [the plaintiffs'] First Amendment rights" and that the Attorney General had stated, in its answer to the plaintiffs' amended complaint, that "a program of enforcement [was] in preparation and await[ed] only the outcome of this case." *Lundquist,* 262 Md. at 540, 278 A.2d at 267.

The record shows that, at the very least, the Fortunetelling Ordinance will adversely affect Nefedro.[4] The County does not dispute that Nefedro operates fortunetelling businesses, and Nefedro has expressed an intent to open a fortunetelling business in Montgomery County if he is allowed to do so. The parties also agree that the Fortunetelling Ordinance would prohibit Nefedro from receiving remuneration for fortunetelling. Indeed, the County's argument is founded on its assertion that Nefedro should not be allowed to receive remuneration for fortunetelling because it is, and should be, illegal in Montgomery County. The undisputed facts therefore demonstrate that Nefedro intends to open a fortunetelling business in Montgomery County but that he would be subject to penalties under the Fortunetelling Ordinance if he did so. These facts are sufficient to establish standing.

## II.

### First Amendment

We now address Nefedro's First Amendment challenge to the Fortunetelling Ordinance. Nefedro argues that the Ordinance violates his right to freedom of speech as guaranteed by the First Amendment.[5] For the foregoing reasons, we agree.

---

4. As discussed *supra,* the parties disagree about when, how, and if Nefedro applied for a business license. As our discussion above demonstrates, this factual dispute is of no consequence.

5. As we have noted, Nefedro also alleges that the Fortunetelling Ordinance violates his right to freedom of speech as guaranteed by Article

### The Fortunetelling Ordinance Regulates Speech

There seems to be no dispute between the parties in this case that fortunetelling is speech.[6] Instead, the issues before us are whether the Fortunetelling Ordinance regulates speech and, if so, whether that regulation violates the First Amendment. Nefedro argues that the Ordinance regulates speech and that, accordingly, the law must pass First Amendment scrutiny. The County responds that because the Ordinance regulates only the payment of money for fortunetelling services, it regulates only conduct. As a result, the County asserts, the Ordinance does not implicate the First Amendment. In our view, the Fortunetelling Ordinance does regulate speech.

The First Amendment, as applied to the states by the Fourteenth Amendment, prohibits the states from passing laws "abridging the freedom of speech." U.S. Const. amend. I. The United States Supreme Court has explained:

> This provision embodies "[o]ur profound national commitment to the free exchange of ideas." *Harte–Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 686, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989). "[A]s a general matter, 'the First Amendment means that government has no power

40 of the Maryland Declaration of Rights. We need not consider Article 40 and the First Amendment separately as Article 40 is read generally *in pari materia* with the First Amendment. *WBAL–TV Div., Hearst Corp. v. State*, 300 Md. 233, 243 n. 4, 477 A.2d 776, 781 n. 4 (1984)

**6.** Nefedro argues that fortunetelling is speech under the First Amendment, citing many courts that have reached that conclusion. *See, e.g., Argello v. City of Lincoln*, 143 F.3d 1152, 1152 (8th Cir.1998) ("The [fortunetelling] ordinance is a content-based regulation of speech."); *Trimble v. City of New Iberia*, 73 F.Supp.2d 659, 666–67 (W.D.La.1999) ("The Court finds that the Ordinance does indeed prohibit speech based on its content, namely speech that involves fortunetelling, palmistry, reading futures and the like."); *Spiritual Psychic Sci. Church v. City of Azusa*, 39 Cal.3d 501, 217 Cal.Rptr. 225, 703 P.2d 1119, 1125 (1985) ("[A]ny prohibition or regulation of fortune-telling must be given full scrutiny under the Constitution."). The County has not refuted Nefedro's argument that fortunetelling is speech. Accordingly, we assume that to be true for purposes of our decision.

to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Bolger v. Youngs Drug Products Corp.,* 463 U.S. 60, 65, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983) (quoting *Police Dep't of Chicago v. Mosley,* 408 U.S. 92, 95, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972)). However, this principle, like other First Amendment principles, is not absolute. *Cf. Hustler Magazine, Inc. v. Falwell,* 485 U.S. 46, 56, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988).

*Ashcroft v. ACLU,* 535 U.S. 564, 573, 122 S.Ct. 1700, 1707, 152 L.Ed.2d 771, 780 (2002) (*Ashcroft I* ).

■ Assuming, as we do, that fortunetelling is speech, the question before us is whether the Fortunetelling Ordinance violates the First Amendment by improperly restricting that speech. The County argues that the Ordinance does not implicate the First Amendment at all because it prohibits not fortunetelling itself, but the receipt of remuneration for fortunetelling. This is not a meaningful distinction. The Supreme Court has held that a restriction on compensation for speech implicates the First Amendment. In *United States v. National Treasury Employees Union,* the Court found unconstitutional the application of a federal law that banned honoraria for federal employees.[7] 513 U.S. 454, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995). The Court explained that such an outright ban on remuneration for speech implicates the First Amendment even though it "neither prohibits any speech nor discriminates among speakers based on the content or viewpoint of their messages." *Nat'l Treasury,* 513 U.S. at 468, 115 S.Ct. at 1014, 130 L.Ed.2d at 981. Such a restriction implicates the First Amendment because "its prohibition on compensation unquestionably imposes a significant burden on

7. The Supreme Court concluded that in regard to the parties before the Court, an honoraria ban on federal employees violated the First Amendment even though "Congress may impose restraints on the job-related speech of public employees that would be plainly unconstitutional if applied to the public at large." *United States v. Nat'l Treasury Employees Union,* 513 U.S. 454, 465, 115 S.Ct. 1003, 1012, 130 L.Ed.2d 964, 978–79 (1995).

expressive activity."[8] *Nat'l Treasury,* 513 U.S. at 468, 115 S.Ct. at 1014, 130 L.Ed.2d at 981. As a result, the Court concluded that "[b]y denying respondents that [financial] incentive, the honoraria ban induces them to curtail their expression. . . ." *Nat'l Treasury,* 513 U.S. at 469, 115 S.Ct. at 1014, 130 L.Ed.2d at 981.[9]

Cases involving "Son of Sam" laws further illustrate the principle that restrictions on the receipt of remuneration for speech implicate the First Amendment.[10] In *Simon & Schuster, Inc. v. Members of the New York State Crime Victims Board,* the Supreme Court addressed such a law, which required any entity contracting with an accused or convicted person for the depiction of a crime to turn over to the state any income from that contract. 502 U.S. 105, 109, 112 S.Ct. 501, 504–05, 116 L.Ed.2d 476, 482–83 (1991). If a victim of the crime recovered a money judgment against the accused or

---

**8.** Explaining the importance of remuneration in promoting speech, the Court noted the "self-evident" fact that, for example, "[p]ublishers compensate authors because compensation provides a significant incentive toward more expression." *Nat'l Treasury,* 513 U.S. at 469, 115 S.Ct. at 1014, 130 L.Ed.2d at 981. The Court also quoted Samuel Johnson, who reportedly said, "No man but a blockhead ever wrote, except for money." *Nat'l Treasury,* 513 U.S. at 469 n. 14, 115 S.Ct. at 1014 n. 14, 130 L.Ed.2d at 981 n. 14 (quoting J. Boswell, Life of Samuel Johnson LL. D. 302 (R. Hutchins ed. 1952)).

**9.** A restriction on speech implicates the First Amendment not only because it restricts the speaker's right to speak, but also because it restricts the recipient's right to hear the speech. The Supreme Court has explained that "where a speaker exists, . . . the protection afforded is to the communication, to its source and to its recipients both." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council,* 425 U.S. 748, 756, 96 S.Ct. 1817, 1823, 48 L.Ed.2d 346, 355 (1976).

**10.** A "Son of Sam" law typically restricts the ability of an individual to receive remuneration for speech that is related to his or her criminal activity, with the proceeds instead going to the victims of the crimes. Garrett Epps, Wising Up: "Son of Sam" Laws and the Speech and Press Clauses, 70 N.C.L.Rev. 493, 500–05 (1992). The term "Son of Sam" comes from the popularly recognized name of a serial killer, David Berkowitz, who terrorized New York in 1977 and subsequently stood to profit from the rights to his story. *Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.,* 502 U.S. 105, 108, 112 S.Ct. 501, 504, 116 L.Ed.2d 476, 482 (1991).

convicted person within five years, the victim would be paid from the fund; otherwise, the money would be returned to the entity. *Simon & Schuster*, 502 U.S. at 109, 112 S.Ct. at 505, 116 L.Ed.2d at 483. The Court explained that "[a] statute is presumptively inconsistent with the First Amendment if it imposes a financial burden on speakers because of the content of their speech." *Simon & Schuster*, 502 U.S. at 115, 112 S.Ct. at 508, 116 L.Ed.2d at 486–87. The Court then determined that this law, in particular, implicated the First Amendment because it "singled out speech on a particular subject for a financial burden that it place[d] on no other speech and no other income." *Simon & Schuster*, 502 U.S. at 123, 112 S.Ct. at 512, 116 L.Ed.2d at 491–92. For this reason, the Court concluded that the statute did not pass First Amendment scrutiny. *Simon & Schuster*, 502 U.S. at 123, 112 S.Ct. at 512, 116 L.Ed.2d at 492.

Other jurisdictions, including this one, have explicitly followed *Simon & Schuster* in concluding that restrictions on remuneration for speech implicate the First Amendment. In *Curran v. Price*, 334 Md. 149, 638 A.2d 93 (1994), we concluded that the Maryland "Son of Sam" statute implicates the First Amendment. The statute, Maryland Code (1957, 1992 Repl. Vol., 1993 Cum. Supp.) Art. 27, § 764, had been modeled after the invalidated New York statute. *Curran*, 334 Md. at 159–60, 638 A.2d at 98. It required parties to submit to the State certain crimes-related speech contracts and compensation arising from those contracts. *Curran*, 334 Md. at 154–56, 638 A.2d at 96–97. Although the Legislature had amended the statute to address some of the concerns raised in *Simon & Schuster*, we concluded that the statute still placed a burden on spèech. *Curran*, 334 Md. at 161, 638 A.2d at 99. As we explained, "to deny compensation for certain speech will chill such speech." *Curran*, 334 Md. at 162, 638 A.2d at 99. The state supreme courts in Arizona, California, Massachusetts, Nevada, and Rhode Island have each reached the same conclusion. *See State ex rel. Napolitano v. Gravano*, 204 Ariz. 106, 60 P.3d 246, 250–52 (App.2002) (concluding that the First Amendment applied to a law that called for the forfeiture of

royalties from books based on racketeering activities); *Keenan v. Superior Court*, 27 Cal.4th 413, 117 Cal.Rptr.2d 1, 40 P.3d 718, 722 (2002) (concluding that "California's analogous provision [to the statute at issue in *Simon & Schuster*] similarly imposes a content-based financial penalty on protected speech"); *Opinion of the Justices to the Senate*, 436 Mass. 1201, 764 N.E.2d 343, 347 (2002) ("Consistent with other courts, we conclude that [a pending bill proposing a 'Son of Sam' law] is a content-based regulation of speech."); *Seres v. Lerner*, 120 Nev. 928, 102 P.3d 91, 97 (2004) ("Because [the 'Son of Sam' law] is a content-based restriction on speech, the statute must pass a strict scrutiny level of review, in line with relevant case authority."); *Bouchard v. Price*, 694 A.2d 670, 676 (R.I.1997) ("[W]e are persuaded that the criminal royalties act is a content-based statute."). Like the Fortunetelling Ordinance, "Son of Sam" laws restrict the ability of an individual to receive remuneration for his or her speech.[11]

---

**11.** Nefedro has cited a number of other cases for the proposition that spending restrictions can violate the First Amendment. *See Meyer v. Grant*, 486 U.S. 414, 421–22, 108 S.Ct. 1886, 1892, 100 L.Ed.2d 425, 435 (1988) (concluding that a restriction on paid petition circulators implicated the First Amendment because "the circulation of a petition involves ... 'core political speech' "); *Buckley v. Valeo*, 424 U.S. 1, 19, 96 S.Ct. 612, 634–35, 46 L.Ed.2d 659, 687–88 (1976) ("A restriction on the amount of money a person or group can spend on political communication during a campaign necessarily reduces the quantity of expression...."); *State v. Brookins*, 380 Md. 345, 368, 844 A.2d 1162, 1176 (2004) ("[T]he spending of money by a political candidate directly affects the ability of that candidate to disseminate his or her political message effectively.").

The problem with Nefedro's reliance on these cases is that they concern the applicability of the First Amendment when the government places restrictions on the expenditure of money by a speaker in furtherance of his or her own speech. For example, an individual must often spend money to have someone circulate a petition, so a restriction on paid petition circulators restricts the individual's ability to circulate the petition. *Meyer*, 486 U.S. at 422–23, 108 S.Ct. at 1892, 100 L.Ed.2d at 435–36; *see also Buckley*, 424 U.S. at 19, 96 S.Ct. at 635, 46 L.Ed.2d at 688 ("[V]irtually every means of communicating ideas in today's mass society requires the expenditure of money.") The present case, on the other hand, concerns a restriction not on the expenditure of money in furtherance of one's own speech, but on the receipt of money in exchange for speech. This is a related, but analytically distinct, issue.

■ As these cases demonstrate, a restriction on remuneration for protected speech is a restriction on the speaker's First Amendment right to freedom of speech. The Fortune-telling Ordinance is such a restriction. By punishing protected speech when that speech is made in exchange for payment, the County is imposing a burden on that speech. Like the government employees in *National Treasury*, or the authors and publishers in the cases involving "Son of Sam" statutes, an individual who wishes to engage in protected speech for a profit will be discouraged from doing so because there is no promise of a financial benefit.[12] This type of burden on speech is something the First Amendment generally forbids, especially when, as in this case, the burden is directed at speech specifically because of the content of that speech.

■ The above notwithstanding, the County repeatedly asserts, and the dissent agrees, that fortunetelling is "inherently fraudulent" and, as a result, should not receive any First Amendment protection. Indeed, the First Amendment does not protect fraudulent statements. *Illinois ex rel. Madigan v. Telemarketing Assocs.*, 538 U.S. 600, 612, 123 S.Ct. 1829, 1836, 155 L.Ed.2d 793, 804 (2003) ("[T]he First Amendment does not shield fraud."). We are not, however, persuaded that all fortunetelling is fraudulent. While we recognize that some fortunetellers may make fraudulent statements, just as some lawyers or journalists may, we see nothing in the record to suggest that fortunetelling always involves fraudulent statements. Indeed, fortunetellers, like magicians or horoscope writers, are able to provide entertainment to their customers or some other benefit that does not deceive those who receive their speech. Just as many other courts have concluded, we view this non-fraudulent speech as receiving protection under

---

12. While addressing whether a religious group could be taxed for selling religious books and pamphlets, the Supreme Court noted that "[i]t should be remembered that the pamphlets of Thomas Paine were not distributed free of charge.... Freedom of speech, freedom of the press, freedom of religion are available to all, not merely to those who can pay their own way." *Murdock v. Pennsylvania*, 319 U.S. 105, 111, 63 S.Ct. 870, 874, 87 L.Ed. 1292, 1297 (1943).

the First Amendment. *See, e.g., Argello v. City of Lincoln,* 143 F.3d 1152, 1153 (8th Cir.1998) (rejecting the argument that a fortunetelling ordinance could "be upheld as a prohibition against fraud" because it did "not require that fortunetellers *know* that they are conveying false information, or that they have no power of seeing into the future"); *Rushman v. City of Milwaukee,* 959 F.Supp. 1040, 1044 (E.D.Wis.1997) (explaining that an ordinance that banned fortunetelling was invalid because "[e]ven if the City is trying to prevent fraud, the Ordinance encompasses much more than fraud"); *Spiritual Psychic Sci. Church v. City of Azusa,* 39 Cal.3d 501, 217 Cal.Rptr. 225, 703 P.2d 1119, 1126 (1985) (explaining that when people who "believe they possess the power to predict what has not yet come to pass ... impart their beliefs to others, they are not acting fraudulently; they are communicating opinions which, however dubious, are unquestionably protected by the Constitution").

In response, the County and the dissent have cited a number of cases in which courts have referred to fortunetelling as fraudulent. We are unpersuaded by these cases. In most of them, the courts were not asked to consider whether fortunetelling was protected speech. *See Mitchell v. City of Birmingham,* 222 Ala. 389, 133 So. 13 (1931) (addressing the authority of a municipality to pass an ordinance inconsistent with state law); *Bridewell v. City of Bessemer,* 35 Ala.App. 337, 46 So.2d 568 (1950) (addressing the authority of a municipality to levy a prohibitory licensing fee outside its city limits); *White v. Adams,* 233 Ark. 241, 343 S.W.2d 793 (1961) (addressing whether the vocation of fortunetelling is a common right or a privilege upon which the state may impose a prohibitory tax); *Fay v. Lambourne,* 124 A.D. 245, 108 N.Y.S. 874 (1908) (addressing a suit by fortunetellers asking for an injunction prohibiting other fortunetellers from using a particular trade name). In another case, there was no freedom of speech argument before the court and the fortunetelling remuneration ban at issue included an explicit exemption for fortunetelling performed "for the purpose of entertainment or amusement." *Ballard v. Walker,* 772 F.Supp. 1335 (E.D.N.Y.1991)

(addressing N.Y. Penal Law § 165.35 (McKinney 1988)). Yet another case, *In re Bartha*, 63 Cal.App.3d 584, 134 Cal.Rptr. 39 (1976), has been explicitly disavowed by that state's supreme court. *Spiritual Psychic*, 217 Cal.Rptr. 225, 703 P.2d at 1122 ("We are unable to subscribe to *Bartha's* broad characterization of fortunetelling as an exclusively commercial activity, and to the theory that it therefore can be indiscriminately regulated, or, in this instance, wholly prohibited."). These cases do not affect our conclusion that some fortunetelling is simply not fraudulent.

The only two cases that the County and the dissent have cited that might have any persuasive effect are a 1928 decision from the Supreme Court of Ohio, *Davis v. State*, 118 Ohio St. 25, 160 N.E. 473 (1928), and an unreported opinion from the United States District Court for the District of Maryland, *Mitchell v. Hartford County*, No. L–01–3998 (D.Md. Sept. 5, 2002). In regard to *Davis*, we agree with the United States District Court for the Northern District of Ohio, which rejected *Davis* when striking down a fortunetelling ban, stating:

> In the case at bar, ... this Court ... concludes that *Davis v. State* does not stand today as a controlling authority that fortune telling is inherently a fraudulent occupation.... The unspoken premise of the Rule in the case at bar, that fortune telling, phrenology, horoscope and the other practices prohibited by the Rule are inherently fraudulent, is not supported by any factual record or factual statement....

*Angeline v. Mahoning County Agric. Soc'y*, 993 F.Supp. 627, 633 (N.D.Ohio 1998) (citations and quotations omitted). As for *Mitchell*, we decline to do as that court did and "defer to the legislative finding ... that fortunetelling is inherently deceptive and, therefore, is unprotected speech." *Mitchell*, No. L–01–3998 at 3. Such deference would allow legislatures to ban any manner of protected speech by simply declaring it "inherently deceptive." Accordingly, we conclude that the Fortunetelling Ordinance regulates speech that the First Amendment protects.

## *Fortunetelling Is Not Commercial Speech*

■ The County argues that if we conclude that the Fortunetelling Ordinance regulates speech, as we have, then it is still constitutional because, according to the County, the law regulates only commercial speech. While we acknowledge that laws restricting commercial speech receive less scrutiny than laws restricting noncommercial speech, we disagree that the Fortunetelling Ordinance regulates commercial speech.

■ The Supreme Court has explained that laws regulating commercial speech do not receive the same level of heightened scrutiny as laws regulating other types of speech. In *Central Hudson Gas & Electric Corp. v. Public Service Commission*, the Court explained that although the First Amendment "protects commercial speech from unwarranted governmental regulation," there is a " 'commonsense' distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech." 447 U.S. 557, 561–62, 100 S.Ct. 2343, 2349, 65 L.Ed.2d 341, 348 (1980) (quoting *Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447, 455–56, 98 S.Ct. 1912, 1918, 56 L.Ed.2d 444, 453 (1978)). Accordingly, "[t]he Constitution . . . accords a lesser protection to commercial speech than to other constitutionally guaranteed expression." *Cent. Hudson*, 447 U.S. at 562–63, 100 S.Ct. at 2350, 65 L.Ed.2d at 348–49.

■ In this regard, our initial determination is whether fortunetelling is commercial speech. The general rule is that commercial speech is speech that "propose[s] a commercial transaction." *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 473–74, 109 S.Ct. 3028, 3031, 106 L.Ed.2d 388, 399 (1989) (quoting *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 762, 96 S.Ct. 1817, 1826, 48 L.Ed.2d 346, 358 (1976)); *see also Lubin v. Agora*, 389 Md. 1, 23, 882 A.2d 833, 846 (2005) (explaining that commercial speech is "speech that does no more than propose a commercial transaction" (quoting *Posadas de P.R. Assocs. v. Tourism Co. of P.R.*, 478 U.S. 328, 340, 106 S.Ct. 2968, 2976, 92 L.Ed.2d 266, 279 (1986))); *Jakanna v. Montgomery County*, 344 Md.

584, 595, 689 A.2d 65, 70 (1997) ("Commercial speech is 'expression related solely to the economic interests of the speaker and its audience.'" (quoting *Cent. Hudson,* 447 U.S. at 561, 100 S.Ct. at 2349, 65 L.Ed.2d at 348)). The line between commercial and noncommercial speech can sometimes be difficult to discern, *see Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio,* 471 U.S. 626, 637, 105 S.Ct. 2265, 2274, 85 L.Ed.2d 652, 663 (1985) ("More subject to doubt, perhaps, are the precise bounds of the category of expression that may be termed commercial speech . . . ."), but the Court has foreclosed the idea that speech is commercial simply because it is made for an economic benefit, *see Bolger,* 463 U.S. at 66–67, 103 S.Ct. at 2880, 77 L.Ed.2d at 477 (explaining that speech is not commercial just because it is an advertisement, refers to a specific product, or has an "economic motivation"); *New York Times Co. v. Sullivan,* 376 U.S. 254, 265–66, 84 S.Ct. 710, 718, 11 L.Ed.2d 686, 698 (1964) (explaining that the fact that the speech was a paid advertisement was as "immaterial" to the question of whether it was commercial speech "as is the fact that newspapers and books are sold").[13]

 Fortunetelling is not commercial speech. The purpose of fortunetelling is not to propose a commercial transaction, nor is it solely related to the economic interests of the speaker. *Fox,* 492 U.S. at 473–74, 109 S.Ct. at 3031, 106 L.Ed.2d at 399; *Jakanna,* 344 Md. at 595, 689 A.2d at 70. The purpose of fortunetelling is instead to provide some other benefit to the individuals involved, whether entertainment or

---

**13.** In its brief, the County cites a number of cases involving the regulation of advertising and solicitation to support its argument that "[l]aws analogous to the County's Fortunetelling [Ordinance] have been sanctioned. . . ." *See, e.g., Fl. Bar v. Went For It, Inc.,* 515 U.S. 618, 620, 115 S.Ct. 2371, 2373, 132 L.Ed.2d 541, 547 (1995) (concerning "targeted direct-mail solicitations" by attorneys); *United States v. Edge Broadcasting Co.,* 509 U.S. 418, 421, 113 S.Ct. 2696, 2700, 125 L.Ed.2d 345, 351 (1993) (concerning "federal statutes that prohibit the broadcast of lottery advertising"). These laws are hardly analogous to the Fortunetelling Ordinance. Advertising and solicitation, unlike fortunetelling, often fall within the definition of commercial speech.

information that sheds light on future events. This is true even though the fortuneteller may receive money in exchange for his or her services; the fact that there is an economic motivation for speech does not transform non-commercial speech into commercial speech. *Bolger,* 463 U.S. at 66–67, 103 S.Ct. at 2880, 77 L.Ed.2d at 477; *New York Times,* 376 U.S. at 265–66, 84 S.Ct. at 718, 11 L.Ed.2d at 698. The fact that some aspect of fortunetelling may involve commerce also does not transform it into commercial speech.[14] *See Fox,* 492 U.S. at 473–75, 109 S.Ct. at 3031–32, 106 L.Ed.2d at 399–400 (identifying commercial speech by looking at "the principle type of expression at issue"). Accordingly, we conclude that the Fortunetelling Ordinance regulates speech that receives full protection under the First Amendment.

### The Fortunetelling Ordinance Is Not Narrowly Tailored

 Having determined that the Fortunetelling Ordinance regulates fully protected speech based on its content, we now determine whether the Ordinance nonetheless passes muster under the First Amendment. A statute that regulates speech based on its content is " 'presumptively invalid,' . . . and the government bears the burden to rebut that presumption." *United States v. Playboy Entm't Group,* 529 U.S. 803, 817, 120 S.Ct. 1878, 1888, 146 L.Ed.2d 865, 882 (2000) (quoting *R.A.V. v. City of St. Paul,* 505 U.S. 377, 382, 112 S.Ct. 2538, 2542, 120 L.Ed.2d 305, 317 (1992)). Not every statute of this sort, however, is unconstitutional. The Supreme Court has explained that a statute that regulates speech based on its content may still comply with the First Amendment if it is

---

14. The County argues that fortunetelling might be commercial speech because it "could involve commercial speech or a mix of commercial and non-commercial speech." This argument is a nonstarter. Practically any speech could include commercial speech, including speech that the First Amendment clearly protects. Under the County's reasoning, statutes regulating newspapers generally would be subject to a lower standard of scrutiny because newspapers sometimes include commercial speech. Instead, we look at whether the "principle type of expression at issue" is one that "propose[s] a commercial transaction." *Bd. of Trs. of State Univ. of N.Y. v. Fox,* 492 U.S. 469, 473–74, 109 S.Ct. 3028, 3031, 106 L.Ed.2d 388, 399 (1989).

"narrowly tailored to promote a compelling Government interest." *Playboy Entm't,* 529 U.S. at 813, 120 S.Ct. at 1886, 146 L.Ed.2d at 879.[15] Nefedro argues that the Ordinance is not narrowly tailored,[16] while the County argues that it is. In our view, the Fortunetelling Statute is not narrowly tailored and, accordingly, is unconstitutional.[17]

▇▇▇▇▇ A statute is not "narrowly tailored" if "a less restrictive alternative would serve the Government's purpose." *Playboy Entm't,* 529 U.S. at 813, 120 S.Ct. at 1886, 146 L.Ed.2d at 879. This requirement "ensure[s] that speech is restricted no further than necessary to achieve the [intended] goal, for it is important to ensure that legitimate speech is not chilled or punished." *Ashcroft v. ACLU,* 542 U.S. 656, 666, 124 S.Ct. 2783, 2791, 159 L.Ed.2d 690, 701 (2004) (*Ashcroft II* ). To that end, a court's question in determining whether a statute is narrowly tailored is "whether the challenged regulation is the least restrictive means among available, effective alternatives." *Ashcroft II,* 542 U.S. at 666, 124 S.Ct. at 2791, 159 L.Ed.2d at 701.

---

**15.** We disagree with the County and the dissent that we should consider the Fortunetelling Ordinance an incidental restriction on speech, subject to the four-factor test from *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). What is ultimately being restricted here is pure speech—*i.e.,* the telling of fortunes—not conduct involving "speech" and "nonspeech elements," like the burning of draft cards that was at issue in *O'Brien,* 391 U.S. at 376–77, 88 S.Ct. at 1678–79, 20 L.Ed.2d at 679–80. The cases we discuss above support that conclusion. *See, e.g., Nat'l Treasury,* 513 U.S. 454, 115 S.Ct. 1003, 130 L.Ed.2d 964 (considering a restriction on honoraria for speech to be a restriction on speech, not expressive conduct); *Simon & Schuster,* 502 U.S. 105, 112 S.Ct. 501, 116 L.Ed.2d 476 (considering a restriction on payment for speech to be a restriction on speech, not expressive conduct).

**16.** In addition to arguing that the Fortunetelling Ordinance is not narrowly tailored, Nefedro argues that it is overbroad and unconstitutional when applied to him. We need not address these arguments because we conclude that the Ordinance is not narrowly tailored.

**17.** As we discuss in this opinion, the County asserts that the Fortunetelling Ordinance is intended to combat fraud. The parties do not dispute that combating fraud is a compelling government interest, so we assume that it is for purposes of this opinion.

Cases involving freedom of speech demonstrate the narrow-tailoring requirement. In *Ashcroft II,* the Supreme Court considered the constitutionality of a federal statute that was intended to protect minors from sexually explicit materials on the Internet. 542 U.S. at 659–60, 124 S.Ct. at 2788, 159 L.Ed.2d at 697. To achieve that goal, the statute imposed a fine and prison time for the knowing posting on the Internet of content that was "harmful to minors," as defined by the statute, unless the defendant could prove that he or she took reasonable measures to make the harmful content accessible only by adults. *Ashcroft II,* 542 U.S. at 661–62, 124 S.Ct. at 2789, 159 L.Ed.2d at 698–99. The Court concluded that the statute was not narrowly tailored because the plaintiffs had suggested a less restrictive alternative that would be at least as effective, if not more so, than what the statute required: blocking and filtering software employed by the Internet user, as opposed to the content creator. *Ashcroft II,* 542 U.S. at 666–70, 124 S.Ct. at 2791–94, 159 L.Ed.2d at 701–04. Similarly, in *Playboy Entertainment,* the Court considered a statute that required cable television operators to fully block sexually-oriented channels during hours when children might be viewing. 529 U.S. at 806, 120 S.Ct. at 1882, 146 L.Ed.2d at 875. The Court concluded that the statute was unconstitutional because an effective, less restrictive alternative was available: an already-existing statute that required cable operators to block certain channels at a cable subscriber's request. *Playboy Entm't,* 529 U.S. at 816–27, 120 S.Ct. at 1887–93, 146 L.Ed.2d at 881–88.

The Fortunetelling Ordinance is not narrowly tailored. According to the County, the purpose of the Fortunetelling Statute is to combat the fraud that apparently ensues from fortunetelling. There is at least one less restrictive, effective means for combating fraud: laws making fraud illegal without respect to protected speech.[18] In fact, Montgomery County

---

18. The Ordinance specifically prohibits only the receipt of remuneration or gratuity for fortunetelling by "cards, palm reading or any other scheme, practice or device." The County asserts that the words

already has such an ordinance. *See* Montgomery County Code, § 11–4 (2009) (prohibiting fraud in regard to deceptive trade practices, including "any deception, fraud, false pretense, false premise, misrepresentation, or concealment, suppression, or omission of any material fact with the intent that consumers rely on the concealment, suppression, or omission, in connection with any consumer goods or services").[19] The State of Maryland also has fraud laws that do not restrict protected speech. *See generally* Md.Code (2002, 2009 Supp.), Title 8 of the Criminal Law Article ("Fraud and Related Crimes"); Md.Code (1975, 2005 Repl. Vol., 2009 Supp.), Title 13 of the Commercial Law Article ("Consumer Protection Act"). Indeed, fraud laws without respect to protected speech date back at least as far as the Code of Hammurabi. *See* The Avalon Project: Code of Hammurabi (L.W. King trans., 1910) (2008), http://avalon.law.yale.edu/ancient/hamframe.asp (last accessed June 8, 2010) ("264. If a herdsman, to whose care cattle or sheep have been entrusted, be guilty of fraud and make false returns of the natural increase, or sell them for money, then shall he be convicted and pay the owner ten times the loss."). For its part, the County has advanced absolutely no legitimate reason why an ordinance directed at speech is necessary to combat fraud when there are speech-neutral fraud laws that are already in effect and an uninterrupted history of such laws dating back to the beginning of recorded

---

"scheme" and "device" refer only to deceptive practices, and, accordingly, the Ordinance is narrowly tailored. We disagree. Regardless of whether the County has correctly interpreted these two words, the County has ignored the word "practice." The common meaning of "practice" is certainly not limited to deceptive practices. *See* Webster's II New College Dictionary 887–88 (3rd Ed. 2005) (defining "practice," in relevant part, as "the act or process of doing something: PERFORMANCE" or "[e]xercise of an occupation or profession <the *practice* of dentistry>").

19. The County argues that its deceptive trade practices ordinance may not be effective for combating the fortunetelling-related fraud it seeks to prevent. That does not save the Fortunetelling Ordinance. If the County is correct that more is needed to address fraud, it may certainly pass an appropriate ordinance that does not infringe on protected speech.

law.[20] Accordingly, we agree with Nefedro that the Fortune-telling Ordinance is not narrowly tailored and conclude that the Fortunetelling Ordinance violates the First Amendment.[21]

## CONCLUSION

Fortunetelling may be pure entertainment, it may give individuals some insight into the future, or it may be hokum. People who purchase fortunetelling services may or may not believe in its value. Fortunetellers may sometimes deceive their customers. We need not, however, pass judgment on the validity or value of the speech that fortunetelling entails. If Montgomery County is concerned that fortunetellers will engage in fraudulent conduct, the County can enforce fraud laws in the event that fraud occurs. The County need not, and must not, enforce a law that unduly burdens protected speech to accomplish its goal. Such a law will curtail and have a chilling effect on constitutionally protected speech.

**JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR ENTRY OF A DECLAR-**

---

**20.** The County argues that the Fortunetelling Ordinance is necessary because "[a]ttempting to address the consequence of . . . fraud, after the fact, is hardly as effective as the prophylactic measure that the County has enacted" and because it is "more efficient to simply ban the fraudulent practice." This is a grave misunderstanding of the First Amendment, which forbids this sort of unfettered infringement on speech in the pursuit of governmental goals, even legitimate ones. *See, e.g., Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 245, 122 S.Ct. 1389, 1399, 152 L.Ed.2d 403, 417 (2002) ("The prospect of crime . . . by itself does not justify laws suppressing protected speech.").

**21.** The County notes two cases in which Maryland courts addressed fortunetelling laws. *Town of Forest Heights v. Frank*, 291 Md. 331, 435 A.2d 425 (1981); *Montgomery County v. Eli*, 20 Md.App. 269, 315 A.2d 136 (1974). The County argues that in neither case did we nor the Court of Special Appeals "address, *sua sponte*, the constitutionality of fortunetelling laws." This argument has no weight because, of course, neither we nor the intermediate appellate court must address issues that are not before us. Similarly irrelevant are other statutes, including those from other counties in Maryland, that prohibit fortunetelling businesses.

ATORY JUDGMENT CONSISTENT WITH THIS OPIN-
ION. COSTS TO BE PAID BY THE COUNTY.

HARRELL, J., dissents.

HARRELL, J., dissenting.

I dissent from the reasoning and conclusion reached in the Majority Opinion, namely, that Montgomery County Code § 32–7[1] (the "Fortunetelling Ordinance"), which prohibits generally persons from demanding or accepting any remuneration or gratuity for forecasting or foretelling, or pretending to forecast or foretell, the future by cards, palm reading, or any other scheme, practice, or device, represents an unconstitutional restriction upon the Appellant's, Nick Nefedro's, right to freedom of speech in violation of the First Amendment to the United States Constitution and Article 40 of the Maryland Declaration of Rights. The Majority Opinion observes that

the County repeatedly asserts ... that fortunetelling is "inherently fraudulent" and, as a result, should not receive any First Amendment protection. Indeed, the First Amendment does not protect fraudulent statements. *Illinois ex rel. Madigan v. Telemarketing Assocs.*, 538 U.S. 600, 612, 123 S.Ct. 1829, 1836, 155 L.Ed.2d 793, 804 (2003) ("[T]he First Amendment does not shield fraud."). We are not, however, persuaded that all fortunetelling is fraudulent. While we recognize that some fortunetellers may make

---

**1.** Montgomery County Code, § 32–7, entitled "Fortunetelling," provides:

Every person who shall demand or accept any remuneration or gratuity for forecasting or foretelling or for pretending to forecast or foretell the future by cards, palm reading or any other scheme, practice or device shall be subject to punishment for a class B violation as set forth in section 1–19 of chapter 1 of the County Code; and in any warrant for a violation of the above provisions, it shall be sufficient to allege that the defendant forecast or foretold or pretended to forecast or foretell the future by a certain scheme, practice or device without setting forth the particular scheme, practice or device employed; provided, that this section shall not apply to any benefit performance or part thereof conducted pursuant to section 30–4 of this Code.

Montgomery County Code, § 32–7 (2004).

fraudulent statements, just as some lawyers or journalists may, we see nothing in the record to suggest that fortune-telling always involves fraudulent statements. Indeed, fortunetellers, like magicians or horoscope writers, are able to provide entertainment to their customers or some benefit that does not deceive those who receive their speech.

Maj. Op. at 599, 996 A.2d at 858. The Majority Opinion, in the face of a tide of judicial decisions from other jurisdictions expressing the view that the *business* of commercial fortune-telling is "inherently fraudulent" and, as such, is not entitled to protection against government restriction, offers a handful of contrary opinions (Maj. op. at 599–600, 996 A.2d at 858–59), endeavors to distinguish the greater body of cases on point (Maj. op. at 599–602, 996 A.2d at 858–60), and hazards an inapt analogy to lawyers and journalists (Maj. op. at 599–600, 996 A.2d at 858–59), the latter of which fails to recognize that, although some lawyers or journalists may make fraudulent statements, the practice of such professions without fraud is attainable. I would affirm the judgment of the Circuit Court for Montgomery County and hold that Montgomery County's election to protect its citizens (and their money and other assets) from for-profit fortunetellers, palmists, card readers, and the like, does not violate Appellant's constitutional right to free speech.

Long-standing Supreme Court precedent establishes that the guarantees of the First Amendment do not provide insulation from government restriction of speech that is fraudulent. *See Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.,* 538 U.S. 600, 612, 123 S.Ct. 1829, 1836, 155 L.Ed.2d 793, 804 (2003) ("[T]he First Amendment does not shield fraud."); *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.,* 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346, 364 (1976) ("Untruthful speech, commercial or otherwise, has never been protected [by the First Amendment] for its own sake."); *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 340, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789, 805 (1974) ("[T]he intentional lie ... belong[s] to that category of utterances which 'are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be

derived from them is clearly outweighed by the social interest in order and morality.'" (quoting *Chaplinsky v. New Hampshire,* 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031, 1035 (1942))). *See also United States Sec. and Exch. Comm'n v. Pirate Investor LLC,* 580 F.3d 233, 255 (4th Cir.2009) ("Punishing fraud, whether it be common law fraud or securities fraud, simply does not violate the First Amendment."); *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n,* 233 F.3d 981, 992 (7th Cir.2000) ("Laws directly punishing fraudulent speech survive constitutional scrutiny even where applied to pure, fully protected speech.").

Many jurisdictions deem the business of commercial fortunetelling to be an inherently fraudulent activity. *Ballard v. Walker,* 772 F.Supp. 1335, 1341 (E.D.N.Y.1991) ("The fortune telling statute, in particular, was designed to protect against 'a prevailing species of fraud whereby its practitioners, professing occult powers of prognostication, annually bilk a gullible public of many millions of dollars.'" (quoting N.Y. Penal Law § 165.35 (McKinney 1988) (practice commentary at p. 254))); *Mitchell v. City of Birmingham,* 222 Ala. 389, 133 So. 13, 14 (1931) ("So associated with cheats, frauds, imposition upon the credulous and superstition is [the business of fortunetelling] that its absolute prohibition is generally declared to be within the police power of the state, and municipalities to which such power is delegated."); *Bridewell v. City of Bessemer,* 35 Ala.App. 337, 46 So.2d 568, 570–71 (1950) ("[T]he business of fortune telling is denominated as a useless calling, and subject to police regulation. This being so, the City ... had the right to so combine its police power and taxing power as to levy a license tax which would discourage, and to all practical purposes prohibit, persons from engaging in the hocus pocus of fortune telling within the limits of its police jurisdiction."); *White v. Adams,* 233 Ark. 241, 343 S.W.2d 793, 794 (1961) ("The lawmakers are entitled to believe that no human being has the power of foretelling future events and that therefore fortune telling may be a fraudulent means of preying upon the ignorant, the superstitious, and the gullible. Consequently it has been uniformly held that the state, in the exercise of its

police power, may constitutionally prohibit fortune telling altogether."); *In re Bartha,* 63 Cal.App.3d 584, 134 Cal.Rptr. 39, 43 (1976) ("It is within the police power of the municipality and province of the legislative body to determine that the business of fortunetelling is inherently deceptive and that its regulation or prohibition is required in order to protect the gullible, superstitious, and unwary."); *Fay v. Lambourne,* 124 A.D. 245, 108 N.Y.S. 874, 876 (N.Y.App.Div.1908) ("The pretense of occult powers and the ability to answer confidential questions from spiritual aid is as bad as fortune telling and a species of it and is a fraud upon the public."); *Davis v. State of Ohio,* 118 Ohio St. 25, 160 N.E. 473, 475 (1928) ("[F]ortunetelling and similar crafts are fraudulent practices, and therefore not within the protection afforded to a lawful business.").

Recognizing the foregoing analyses, Judge Legg of the United States District Court for the District of Maryland, in an unpublished memorandum opinion in *Mitchell v. Harford County,* No. L–01–3998 (D.Md. Sept. 5, 2002), upheld, on summary judgment, the constitutionality of anti-fortunetelling statutes passed by the City of Aberdeen and Harford County that are nearly identical to § 32–7 of the Montgomery County Code.[2] In *Mitchell,* the plaintiff, claiming that she was "a psychic capable of divining the future through the use of Tarot readings, palm readings, and dream analysis," sought to open a fortunetelling business in Aberdeen. Slip op. at 2. Both the City and the County, however, had ordinances prohibiting persons from engaging in fortunetelling for consideration. *Id.* at 1–2. Specifically, the City's statute, which was adopted in 1979, read:

It shall be unlawful for any person in the Incorporated Town of Aberdeen to ask, demand, charge or accept any

---

2. Lest anyone presume hypocrisy (in light of Maryland Rule 1–104(b) regarding the prohibition of general citation of unreported opinions) on my part for relying here on an unreported opinion of the U.S. District Court for the District of Maryland, I hasten to note that Rule 1–104(b) applies solely to the citation of unreported opinions of the Court of Appeals and Court of Special Appeals and then only to parties offering same to either Maryland appellate courts.

remuneration, gratuity or anything of value for forecasting, foretelling or pretending to forecast or foretell the future of another by cards, palm reading or any other scheme, practice or device.

*Id.* at 1. Similarly, the Harford County Code provided:

Any person in the county who shall ask, demand, charge or accept any remuneration, gratuity or anything of value for forecasting or foretelling or for pretending to forecast or foretell the future of another, by cards, palmreading or any other scheme, practice of [sic] device, shall be deemed guilty of a misdemeanor . . .

*Id.* at 1–2. The plaintiff challenged the constitutionality of the respective statutes, arguing, *inter alia,* that they "violate[d] the guarantees of free speech contained in the First Amendment of the United States Constitution and Article 40 of the Maryland Declaration of Rights." *Id.* at 2.

In rejecting the plaintiff's contentions and granting summary judgment in favor of the governmental defendants, Judge Legg stated:

As a general rule, the government may not abridge the public's right to free speech. The Supreme Court has held, however, that "[u]ntruthful speech, commercial or otherwise" is not protected. *Virginia State Board of Pharmacy v. Virginia Citizen's [Citizens] Consumer Council,* 425 U.S. 748, 771 [96 S.Ct. 1817, 48 L.Ed.2d 346] (1976). In keeping with this principle, courts have deferred to the determinations of municipalities and legislatures that "the business of fortunetelling is inherently deceptive. . . ." *In re Bartha,* 63 Cal.App.3d 584, 591 [134 Cal.Rptr. 39] (1976). This Court will defer to the legislative finding of the City and Harford County that fortunetelling is inherently deceptive and, therefore, is unprotected speech. Accordingly, Mitchell's First Amendment claim must fail.

*Id.* at 3. The District Court observed further that, "[e]ven if fortunetelling were protected speech, the statutes would withstand constitutional scrutiny," opining:

The statutes do not target the speech itself, but instead the noncommunicative act of selling the speech. Thus, *United States v. O'Brien*, 391 U.S. 367 [88 S.Ct. 1673, 20 L.Ed.2d 672] (1968), provides the applicable legal test for determining the constitutionality of the statutes.[3]

*O'Brien* establishes a four part test for evaluating the constitutionality of regulations that target noncommunicative acts, but have the incidental effect of suppressing speech. *Id.* at 377 [88 S.Ct. 1673]. Specifically a statute must:

(i) be within the constitutional power of the government;

(ii) be unrelated to the suppression of free expression;

(iii) further an important or substantial government interest; and

(iv) restrict speech no greater than is necessary to achieve the government interest at stake.

*Id.*

The statutes clearly satisfy the first three requirements. First, it is within the constitutional power of the government to regulate fortunetelling. Second, the purpose of the statutes is to prevent fraud, not to suppress fortunetelling altogether. Preventing fraud is an important government interest. *See Cantwell v. Connecticut*, 310 U.S. 296, 306 [60 S.Ct. 900, 84 L.Ed. 1213] (1940). Thus, the crucial question is whether the statutes restrict more speech than is necessary to prevent fraud.

Anti-fortunetelling statutes are designed to prevent " 'a prevailing species of fraud whereby its practitioners, professing occult powers of prognostication, annually bilk a gullible public of many millions of dollars.' " *Ballard v.*

---

**3.** In a footnote, Judge Legg observed that "[t]he statutes ban fortunetelling for consideration, not fortunetelling itself, nor the advertising of fortunetelling services. The speech at issue here is, therefore, 'speech for profit,' as opposed to 'commercial speech.' " *Id.* at 4 n. 3 (citing *Bd. of Trs. of State Univ. of New York v. Fox*, 492 U.S. 469, 482, 109 S.Ct. 3028, 3036, 106 L.Ed.2d 388, 405 (1989)) ("While these examples consist of speech for a profit, they do not consist of speech that *proposes* a commercial transaction, which is what defines commercial speech. . . .").

*Walker,* 772 F.Supp. 1335, 1341 (E.D.N.Y.1991) (quoting N.Y. Penal Law §§ 165.35 (McKinney 1988) (practice commentary at p. 254)). Courts have held that it is within the police power of the state to enact such regulations, and court should defer to legislative determinations that the "regulation or prohibition [of fortune-telling] is required in order to protect the gullible, superstitious, and unwary." *In re Bartha,* 63 Cal.App.3d at 591 [134 Cal.Rptr. 39].

[The plaintiff] argues that the statutes could be amended to prohibit *fraudulent* fortunetelling for consideration, as opposed to prohibiting all fortunetelling for consideration. Presumably such a statute would make it illegal for any fortuneteller to represent an ability to see the future if they did not genuinely believe that they did, indeed, possess such an ability. [The plaintiff] has submitted an affidavit attesting to the sincerity of her belief in her ability to divine the future.

The sincerity of [the plaintiff's] beliefs is immaterial. Neither she nor anyone else can foretell the future. The law does not permit the sale of a bogus cancer remedy, for example, simply because the seller wholeheartedly believes in the efficacy of the product. The sincerity of the seller's belief does not turn a worthless product or service into a valuable one. The state is empowered to protect the public, especially the most gullible and unsophisticated members of the public, by banning the sale of valueless products and services.

It must be remembered that the statutes do not ban fortunetellers from telling fortunes. The practitioner may claim to have occult powers so long as she does not charge for her services. Moreover, the fortuneteller may charge a fee so long as she does not claim to have occult powers she lacks. Fortunetelling as entertainment is entirely legal and not banned by the statutes. Accordingly, the statutes do not violate the First Amendment.

*Id.* at 3–5.

Although the District Court's decision in *Mitchell* is not binding upon this Court for at least a couple of reasons, it is,

in my view, sufficiently persuasive as to move me to conclude that affirmance of the judgment of the Circuit Court for Montgomery County is the correct outcome in the present case. The Fortunetelling Ordinance contained in the Montgomery County Code is, in essence, identical to the provisions upheld against First Amendment challenge by the District Court in its decision in *Mitchell.* By limiting its application to what many jurisdictions have concluded to be the inherently fraudulent business of fortunetelling for remuneration, rather than preventing all fortunetelling, the ordinance restricts no more speech than is necessary to further the County's expressed and significant interest in preventing fraud from being perpetrated upon its citizens. The Majority opinion, deeming itself more insightful about the nature of commercial fortunetelling than the largely factual assessment of the Montgomery County government, substitutes its judgment for that of the legislative body. I, on the other hand, would hold that § 32–7 of the Montgomery County Code does not restrict impermissibly Appellant's First Amendment rights.