NIEMEYER, Circuit Judge,
dissenting:
The Montgomery County Council enacted, at the urging of pro-choice groups, Resolution 16-1252, requiring pregnancy centers that provide pregnancy advice but not medical services to display a sign on their premises, stating that “the Center does not have a licensed medical professional on staff’ and “the Montgomery County Health Officer encourages women who are or may be pregnant to consult with a licensed health care provider.” All *195 of the pregnancy centers in Montgomery County that provide abortions have licensed medical professionals on staff. The Resolution addressed the County Council’s concern that clients of pregnancy centers without licensed medical professionals are being “misled into believing that a Center is providing medical services when it is not.”
Centro Tepeyac is a nonprofit pregnancy center that provides information about pregnancy and other services to pregnant women. The center does not, however, provide abortions, comprehensive birth control, or other medical services, nor does it have any licensed medical professional on staff. Shortly after Resolution 16-1252 was enacted, Centro Tepeyac commenced this action challenging the law under the First Amendment.
In its assessment of the Resolution, the district court appropriately noted that the entire mandated message was compelled speech and was therefore content-based. Centro Tepeyac v. Montgomery Cnty., 779 F.Supp.2d 456, 462 (D.Md.2011). Recognizing that commercial speech is subject to a lower level of scrutiny, the court found that Resolution 16-1252 applied at least in part to noncommercial speech and therefore was subject to strict scrutiny. Id. at 463-65. In applying strict scrutiny to the entire mandated speech, the court said, “[I]t cannot be said as a matter of law that the entire Resolution was narrowly tailored to promote [the County’s compelling government interest in preserving public health].” Id. at 468.
As far as this analysis went, the district court applied established First Amendment jurisprudence. But then it abandoned that course when it divided the mandated speech and assessed each sentence independently. As to the first sentence, the court found that it was narrowly tailored to serve the government’s interest in public health and therefore was likely constitutional, explaining that “[i]t does not require any other specific message [than to announce that a licensed medical professional is not on staff] and in neutral language states the truth.” Centro Tepeyac, 779 F.Supp.2d at 471. As to the second sentence, it found that it was “unneeded” to serve the government interest, was not “the least restrictive means of achieving [the] relevant government interest,” and therefore was likely unconstitutional. Id. at 468-69. The court backed up its assessment of the second sentence by listing “several options less restrictive than compelled speech.” Id. at 469 n. 9.
Surprisingly, the majority affirms the district court’s analysis and judgment, concluding that the court “demonstrated a firm grasp of the legal principles pertinent to the underlying dispute.” Ante, at 192. But, by dividing its assessment of the Resolution and approving one sentence but not the other, the district court effectively and impermissibly rewrote the message compelled by the Resolution, reducing it to a form that the court believed would make it constitutional. Compounding the error, the district court engaged in something novel to First Amendment jurisprudence— a selective application of strict scrutiny— which is inappropriate. See Riley v. Nat’l Fed’n of the Blind of N.C., Inc., 487 U.S. 781, 796, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988) (“[W]e cannot parcel out the speech, applying one test to one phrase and another test to another phrase”). One need only consider the district court’s entire opinion to see the infirmity. Whereas the court appropriately tested the second sentence’s constitutionality against a range of less-restrictive alternatives, it did not do so for the first. In fact, the alternatives identified by the district court applied equally to both sentences. Rather than recognize this basic inconsistency, the ma *196 jority affirms the analysis without explanation. Finally, the majority approves the inappropriate reasons given by the district court for upholding the first sentence— that it was “neutral” and “true” — without providing any legal justification.
With its affirmance, the majority places itself in a curious position in view of its holding today in Greater Baltimore Center for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore, 721 F.3d 264, 2013 WL 3336884, No. 11-1111(L) (4th Cir. July 3, 2013) (en banc). In Greater Baltimore Center, the majority concluded that the plaintiffs had not demonstrated, as a matter of law, that an ordinance compelling certain pregnancy centers to post a sign stating that the center did not provide or refer for abortion was unconstitutional, because facts as to the applicability of the ordinance and its effect were either disputed or factually undeveloped. The record in Greater Baltimore Center contained the full legislative history. Yet, in this case, where the Resolution mandates similarly, although less explicitly, that the pregnancy center post a sign about the limitations of its services, the majority affirms the district court’s conclusion that the order is likely unconstitutional as a matter of law, based on the same record that existed in Greater Baltimore Center.
By affirming the district court’s decision, the majority effectively approves novel and erroneous First Amendment principles. It upholds the ruling that one sentence of the compelled speech is likely unconstitutional while the other is likely constitutional, even though both are mandated and are subject to strict scrutiny. It also approves an analysis that is internally inconsistent. If the second sentence was not narrowly tailored because it was not the least restrictive means of serving the County’s interests, so must the first sentence not be the least restrictive means available, as the alternatives identified by the district court applied equally to both sentences. And finally, the majority approves the totally new and legally inappropriate reasons given by the district court for finding that the first sentence satisfied the narrowly-tailored test — that the mandated speech was “neutral” and “true.”
As does the majority, I would affirm the district court’s conclusion that Resolution 16-1252 compelled speech; that it is subject to strict scrutiny; and that, as a whole, it is not narrowly tailored to serve the government’s asserted compelling interests. But I would also conclude that even if the first sentence were considered independently, it is unconstitutional for the same reasons that the whole message and the second sentence taken alone are unconstitutional. In my view, the district court “misapprehend[ed] the law” with respect to (1) its authority to parse the compelled message and (2) its conclusion that the first sentence was narrowly tailored. See Quince Orchard Valley Citizens Ass’n, Inc. v. Hodel, 872 F.2d 75, 78 (4th Cir.1989). Because of these legal errors, its ruling amounted to an abuse of discretion. See id.
I
As a matter of background, Centro Tepeyac is a Montgomery County nonprofit corporation that provides information and services to pregnant women, including free pregnancy tests, diapers, baby clothes, parenting assistance, and confidential conversations about pregnancy options. Critically, Centro Tepeyac does not provide abortions, comprehensive birth control, or any other medical services, and it does not, therefore, have licensed medical professionals on staff. It commenced this action challenging Resolution 16-1252, contending that the Resolution compels it to speak in a manner that it would not other *197 wise choose to speak and therefore violates its First and Fourteenth Amendment rights.
Resolution 16-1252 requires that all pregnancy centers, defined as those (1) having “a primary purpose to provide pregnancy-related services”; (2) not having “a licensed medical professional on staff’; and (3) providing “information about pregnancy-related services, for a fee or as a free service,” conspicuously display a sign, stating that “the Center does not have a licensed medical professional on staff’ and “the Montgomery County Health Officer encourages women who are or may be pregnant to consult with a licensed health care provider.” A violation of the Resolution is punishable as a Class A civil violation.
II
At the outset, I agree with the district court and the majority that the entire Resolution, as well as the second sentence alone, likely violates Centro Tepeyac’s First Amendment rights. I would go further and conclude additionally that when the first sentence is considered alone, it also violates Centro Tepeyac’s First Amendment rights.
All agree that the first sentence compels speech and that it is subject to strict scrutiny. But then, in determining whether the first sentence was narrowly tailored, the district court accepted as compelling the County’s stated interest in addressing its concern “that clients may be misled into believing that a Center is providing medical services when it is not” and concluded:
As discussed above, the interest in public health and access to medical care may be described as compelling. And, the record is at least colorable at this stage to suggest that the disclaimer is narrowly tailored to meet the interest: only requiring those [pregnancy centers] to post a notice that a licensed medical professional is not on staff. It does not require any other specific message and in neutral language states the truth.
Centro Tepeyac, 779 F.Supp.2d at 471 (emphasis added). This conclusion about how the first sentence is narrowly tailored is undoubtedly inconsistent with First Amendment principles.
The first reason the district court gave — that the required speech “does not require any other specific message” — is merely a positive evaluation about the content of the speech, essentially concluding that a pregnancy center should not find it troubling to speak the message. But this overlooks that Centro Tepeyac does indeed object to being compelled to speak this mandated statement, for reasons relating to its mission. The record also shows that several other pregnancy centers likewise objected to the mandated sign during hearings on the Resolution. More specific to First Amendment jurisprudence, the court overlooked the fact that mandating speech is a content-based restriction on speech that infringes freedom by merely denying the regulated pregnancy centers’ right to not speak at all. See Riley, 487 U.S. at 796-97, 108 S.Ct. 2667 (“[T]he First Amendment guarantees ‘freedom of speech,’ a term necessarily comprising the decision of both what to say and what not to say”). “[T]he government, even with the purest of motives, may not substitute its judgment as to how best to speak for that of speakers and listeners.” Id. at 791, 108 S.Ct. 2667.
The second reason the district court gave for finding the first sentence was narrowly tailored was that the mandated speech speaks “the truth” in neutral language. But this is also not a legitimate or sufficient justification for compelling speech. As the Supreme Court stated, *198 “[The] general rule, that the speaker has the right to tailor the speech, applies not only to expressions of value,- opinion, or endorsement, but equally to statements of fact,” Hurley v. Irish-American Gay, Lesbian, & Bisexual Group of Boston, 515 U.S. 557, 573, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995), even if the compelled statements are factually accurate, see Riley, 487 U.S. at 797-98, 108 S.Ct. 2667.
In addition to its flawed analysis of the first sentence, the district court made another First Amendment error. It failed to address the available alternatives to compelling speech. This is a curious omission, given that the court ably identified alternatives that rendered the second sentence unconstitutional. See Centro Tepeyac, 779 F.Supp.2d at 469 n. 9. In fact, the very same available alternatives to the second sentence also apply to the first. This alone should require reversal of the district court’s conclusion. See Thompson v. Western States Med. Ctr., 535 U.S. 357, 373, 122 S.Ct. 1497, 152 L.Ed.2d 563 (2002) (“If the First Amendment means anything, it means that regulating speech must be a last — not first — resort”).
At bottom, it is clear that the district court failed to apply the proper First Amendment analysis.
A correct assessment of whether the Resolution, including the first sentence of the mandated speech, was narrowly tailored is a question of law. See Village of Schaumburg v. Citizens for a Better Env’t, 444 U.S. 620, 634, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980) (whether an ordinance is overbroad is “a question of law that involved no dispute about the characteristics of’ the plaintiff). And any casual assessment of the first sentence leads inevitably to the conclusion, that it is not narrowly tailored and therefore is unconstitutional.
First, Resolution 16-1252 (and its first sentence) is overinclusive in that it applies to pregnancy centers regardless of whether they accurately represent whether they have a licensed medical professional on staff. See FEC v. Mass. Citizens for Life, Inc., 479 U.S. 238, 265, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986) (stating that the “government must curtail speech only to the degree necessary to meet the particular problem at hand” and “must avoid infringing on speech that does not pose the danger that has prompted regulation”).
Second, the first sentence is underinclusive, posing special problems in the First Amendment context because it “raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint.” Brown v. Entm’t Merchants Ass’n, — U.S. —, 131 S.Ct. 2729, 2740, 180 L.Ed.2d 708 (2011); see also City of Ladue v. Gilleo, 512 U.S. 43, 51, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994) (“[A]n exemption from an otherwise permissible regulation of speech may represent a governmental attempt to give one side of a debatable public question an advantage in expressing its views to the people” (internal quotation marks omitted)). In this case, centers like Centro Tepeyac are singled out for disfavored treatment while many other sources that pregnant women may consult for advice — internet sites, bookstores, or houses of worship— are left unregulated, regardless of whether the advice they give comes from a “licensed medical professional.” Where, as here, the government seeks to burden speech in the name of some public interest, it must “demonstrate its commitment to advancing this interest by applying its prohibition evenhandedly.” Fla. Star v. B.J.F., 491 U.S. 524, 540, 109 S.Ct. 2603, 105 L.Ed.2d 443 (1989).
Third, there are several available alternatives to compelling speech. Both the available alternatives on which the district *199 court relied to find the second sentence unconstitutional, as well as others not considered by the district court, reflect Resolution 16-1252’s unconstitutionality. First, Montgomery County could speak with its own voice. It might, for example, use its own resources to undertake public education campaigns addressing the alleged dangers of pregnancy centers or, more generally, promoting consultations with physicians for pregnant women. Cf. 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 507, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996) (“It is perfectly obvious that alternative forms of regulation that would not involve any restriction on speech would be more likely to achieve the State’s goal of promotion temperance.... [EJdueational campaigns focused on the problems of excessive, or even moderate, drinking might prove to be more effective”).
As another alternative, the County could produce a document or website listing local pregnancy centers and noting whether medical professionals are available at each. See Riley, 487 U.S. at 800, 108 S.Ct. 2667 (“[T]he State may itself publish the detailed financial disclosure forms it requires professional fundraisers to file. This procedure would communicate the desired information to the public without burdening a speaker with unwanted speech”).
And as yet another alternative, the County could always pursue the option of prosecuting violations of laws against practicing medicine without a license or laws proscribing false or deceptive advertising. See Riley, 487 U.S. at 800, 108 S.Ct. 2667; see also Nefedro v. Montgomery Cnty., 414 Md. 585, 996 A.2d 850, 863-64 (2010) (holding that fraud laws were a less restrictive alternative to a law prohibiting remuneration for fortune telling).
Without first trying these or similar options, the County could not have adopted a speech-restrictive strategy. See Thompson, 535 U.S. at 373, 122 S.Ct. 1497.
The majority affirms the district court’s analysis without recognizing or justifying its erroneous application of First Amendment law. Rather, it abdicates, noting that the court demonstrated “a firm grasp of the legal principles.”
Because I conclude that Resolution 16-1252 is unconstitutional on its face, I would affirm the district court’s conclusion that the second sentence of the mandated speech was likely unconstitutional and reverse its conclusion that the first sentence could be separated from the second sentence. Additionally, I would reverse the district court’s finding that the first sentence was narrowly tailored.
Judges Shedd and Agee have asked me to show them as joining this opinion.